■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TAMMAR CANCER, Appellant. [791 NYS2d 207]—

Cardona, P.J. Appeal from a judgment of the Supreme Court (Pulver, Jr., J.), rendered July 27, 2001 in Albany County, convicting defendant following a nonjury trial of the crimes of robbery in the first degree, robbery in the second degree and burglary in the first degree.

On March 28, 1999, police were summoned to the Hood Funeral Home in the City of Albany and told by Floyd Cowan that he and his brother, Harold Hood, were victims of a robbery in their second-floor residence. The police found Hood, who was bleeding, tied up on the second floor and learned that a safe containing Hood's valuables had been stolen. The police later arrested Jada Heath who confessed to the crime and eventually identified Terrance Faulkner, Timothy Walton and defendant as coparticipants. Thereafter, defendant was indicted for robbery in the first degree, robbery in the second degree and burglary in the first degree. Following a nonjury trial, defendant was convicted of all charges and sentenced as a second felony offender to an aggregate prison term of 25 years, prompting this appeal.

Initially, defendant contends that the convictions were not supported by legally sufficient evidence. In determining that issue, this Court examines the evidence in a light most favorable to the prosecution (*see People v Acosta*, 80 NY2d 665, 672 [1993]; *People v Luck*, 294 AD2d 618, 618 [2002], *lv denied* 98 NY2d 699 [2002]). If "there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclu-

sion reached by the [factfinder] on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime[s] charged," the verdict will not be set aside (*People v Bleakley*, 69 NY2d 490, 495 [1987] [citation omitted]).

Here, the testimony of Heath, as supplemented and corroborated by other evidence, established all the elements of the three crimes (*see* Penal Law § 140.30 [2]; § 160.10 [1]; § 160.15 [1]). Specifically, Heath testified that she and defendant, along with Faulkner and Walton, agreed to go to the Hood Funeral Home to access a safe which they believed contained a substantial amount of money. Heath testified that she drove the group to and from the funeral home, that during the planning stages of the crime defendant told her to "go up to the door and ask[ ] if Mr. Hood was there, to see if anybody was going to be home." Heath testified that the first time the group went to the funeral home, Hood was not at home, but they returned a few hours later. She indicated that she rang the doorbell to the funeral home and, after she spoke to Cowan, defendant, Faulkner and Walton went to the back entrance of the building. Heath then pulled her car to the rear of the building where defendant and Walton emerged with the safe and placed it in her trunk. Shortly thereafter, Faulkner came out and told the others that he hit Hood with a stick because Hood would not disclose the combination to the safe. Additionally, Heath testified that defendant gave her money for gas after they had successfully completed the crimes. Throughout Heath's testimony, she included, inter alia, specific statements made by defendant regarding planning and execution of the crimes.

The People also produced the testimony of Nancy Weslowski, an individual who lived across the street from the funeral home. Weslowski testified that, on two separate occasions several hours apart on March 28, 1999, she saw the car driven by Heath that day parked in front of the funeral home. On both occasions, she stated that the vehicle was occupied by a woman and three men, and the second time she saw them she observed the three men exit the vehicle and walk to the side entrance of the funeral home. She also saw the woman exit the car and go to the front door of the funeral home to knock on the door. Weslowski testified that the activity she witnessed was so suspicious she wrote down the vehicle's license plate information to provide to the police. The People also presented Amy Poutre, who testified that she saw Faulkner and Walton with jewelry that matched the description of the stolen items and she overheard defendant and Walton saying that Heath "better keep her mouth shut"

while in jail. Furthermore, Danielle McGrail testified that defendant admitted to her that "Jada went to the door and they had bum rushed the door and tied an old man up and beat him and they robbed him." Moreover, the doctor who treated Hood for his injuries indicated that Hood, who was 68 years old at the time of the crimes, suffered five fractured ribs and a liver injury and spent eight days in the hospital.

The proof in this record, viewed in the light most favorable to the People, constituted legally sufficient evidence to support the charged crimes (*see People v Zabala,* 290 AD2d 578, 580 [2002], *lv denied* 97 NY2d 735 [2002]). Furthermore, after viewing the proof in a neutral light and weighing the conflicting testimony and inferences that may be drawn therefrom, we find no reason to disregard the credibility determinations of the trier of fact and conclude that the verdict was not against the weight of the evidence (*see People v Massmann,* 13 AD3d 808, 809 [2004]; *People v Luck, supra* at 619).

Defendant next argues that Supreme Court erred in denying his motion for a mistrial based upon the People's failure to timely provide CPL 710.30 notice of a pretrial photo identification. Specifically, defendant's motion was made after Poutre identified him during her testimony on the basis that she had been shown a photo of defendant by the police prior to trial. Notably, a narrow exception to the notice and hearing requirements of CPL 710.30 exists for pretrial identification procedures " '[i]n cases in which the defendant's identity is not in issue, or those in which the protagonists are known to one another' " (*People v Rodriguez,* 79 NY2d 445, 449 [1992], quoting *People v Gissendanner,* 48 NY2d 543, 552 [1979] [emphasis omitted]). If the exception applies, it "obviates the need for CPL 710.30 notice" (*People v Graham,* 283 AD2d 885, 887 [2001], *lv denied* 96 NY2d 940 [2001]).

Here, Supreme Court conducted a hearing outside the jury's presence, taking testimony from Poutre and Detective Kenneth Wilcox regarding Poutre's prior knowledge of defendant and the photo identification. Poutre testified that, although she did not know defendant's last name at the time, she had known him for five or six months prior to the subject crimes and, during those months, defendant had been at her house approximately 30 times and had spent the night 10 to 15 times. Wilcox then showed Poutre a photo of defendant and asked her if that was the person she meant. She replied affirmatively and Wilcox then told her defendant's last name.

This Court has held that when a photo identification is used " 'to put a name to a face' " with which the witness is already

familiar, it is simply confirmatory and thus meets the standard for the exception (*People v Cobian*, 185 AD2d 452, 453 [1992], *lv denied* 81 NY2d 838 [1993]; *see People v Laurey*, 163 AD2d 742, 743 [1990], *lv denied* 76 NY2d 941 [1990]). Inasmuch as the testimony of Poutre and Wilcox sufficiently established that Poutre and defendant were acquaintances and that Poutre had a level of familiarity with defendant, the exception to the notice requirement was appropriately applied (*see People v Rodriguez, supra* at 450; *People v Tas*, 51 NY2d 915, 916-917 [1980]).

Next, defendant claims that Supreme Court abused its discretion by admitting the statements of Faulkner and Walton. While "normally an admission made by one defendant is not binding upon and may not be used against another defendant" (*People v Berkowitz*, 50 NY2d 333, 341 [1980]), where a conspiracy is involved, each coconspirator may be considered to speak for the others to the extent that the statements are made in furtherance of and in the course of that conspiracy (*see id.*). Before the coconspirators' statements may be considered, a prima facie case of conspiracy must be established (*see People v Salko*, 47 NY2d 230, 238 [1979]). In order to establish same, proof of an agreement to commit a crime and an overt act towards carrying out that agreement is required (*see People v Berkowitz, supra* at 341; *People v Salko, supra* at 237; *People v Sledge*, 223 AD2d 922, 925-926 [1996], *lv denied* 88 NY2d 854 [1996]). After a prima facie case has been made out, the statements of each coconspirator are then admissible against every other coconspirator as an exception to the hearsay rule (*see People v Berkowitz, supra* at 341; *People v Salko, supra* at 237; *People v Sledge, supra* at 925-926).

Here, defendant maintains that the People did not submit sufficient prima facie proof of a conspiracy to allow the use of the codefendants' statements. However, proof of that nature offered by, for example, Weslowski, Poutre and McGrail appears to have adequately served this purpose (*see People v Berkowitz, supra* at 341-342). In any event, even assuming that the statements of Faulkner and Walton were admitted in error, we would find the error to be harmless given the overwhelming evidence of defendant's guilt (*see People v Almeida*, 159 AD2d 508, 509 [1990], *lv denied* 76 NY2d 730 [1990]).

Next, contrary to the assertions in defendant's pro se brief, a review of the record, in its totality, reveals that defendant was afforded meaningful representation from defense counsel (*see People v Henry*, 95 NY2d 563, 564 [2000]). Notably, even if defendant is correct in arguing that defense counsel erred by not objecting to the failure of Supreme Court to place on the record

its ruling on defendant's motion to inspect the grand jury minutes (*see* CPL 210.30 [5]), such an error, standing alone, would not be sufficient to constitute ineffective assistance of counsel (*see generally People v Ballard*, 13 AD3d 670 [2004]). Furthermore, although defendant claims that defense counsel failed to properly cross-examine a prosecution witness or call an alleged alibi witness, he has failed to demonstrate an absence of strategic or legitimate reasons for counsel's actions in that regard (*see People v Carralero*, 9 AD3d 790, 792 [2004]). Moreover, defense counsel made appropriate pretrial motions and submitted several memoranda to Supreme Court in support of defendant's contentions. Additionally, counsel vigorously cross-examined the People's witnesses and the record reflects that defendant was consulted throughout the trial.

Finally, defendant contends that his sentence was harsh and excessive. Although defendant received a lengthy sentence, given defendant's prior history and his participation in a violent crime carried out against two elderly men, we find no abuse of Supreme Court's discretion. Additionally, defendant has not shown extraordinary circumstances warranting a reduction of the sentence in the interest of justice (*see People v Parker*, 305 AD2d 858, 859-860 [2003], *lv denied* 2 NY3d 804 [2004]).

Crew III, Peters, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed.