■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TRAVIS AUGUSTINE, Appellant. [932 NYS2d 247]—

McCarthy, J.

When defendant was arrested on unrelated charges on July 18, 2008, he was driving the victim's truck and had her cell phone and debit card in his possession. On July 28, 2008, the victim's body was discovered buried on her property, beneath the body of her dog. Defendant was indicted and found guilty of murder in the second degree, aggravated cruelty to animals and criminal possession of stolen property in the fourth degree (two counts). County Court sentenced him, as a second felony offender, to 25 years to life for murder, two years for aggravated cruelty to animals and 2 to 4 years for each count of criminal possession of stolen property, all to be served consecutively. Defendant appeals.

County Court properly denied defendant's motion to suppress his statements to police. The narrow issues presented on appeal with regard to this argument are whether defendant was repre-

sented by counsel on his violation of probation charge so that questioning could not take place unless counsel was present or he waived his rights in counsel's presence, and whether the police were required to provide *Miranda* warnings before questioning him on July 27, 2008. "[A] defendant in custody in connection with a criminal matter for which he [or she] is represented by counsel may not be interrogated in the absence of his [or her] attorney with respect to that matter or an unrelated matter unless he [or she] waives the right to counsel in the presence of his [or her] attorney" (*People v Lopez*, 16 NY3d 375, 377 [2011]). On the other hand, if a suspect in custody is not actually represented by counsel on pending charges and does not request counsel, police may question that person about unrelated matters (*see People v Hooks*, 71 AD3d 1184, 1185 [2010]). To determine whether the police may question a defendant on matters unrelated to the pending offense, a court must inquire as to three elements: custody, actual representation and entry of counsel (*see People v Lopez*, 16 NY3d at 382; *People v West*, 81 NY2d 370, 377 [1993]). The defendant bears the burden of showing that he or she was actually represented by counsel on the earlier charge at the time of questioning (*see People v Rosa*, 65 NY2d 380, 387 [1985]).

Here, defendant was in custody on an unrelated violation of probation charge.[1] The parties dispute whether defendant was represented by counsel on that charge. Defendant presented the Town Court arraignment memorandum on which the court had checked the "Yes" box next to "[c]ounsel assigned" and had written in "Public Defender[']s Office." On the other hand, the Town Justice testified that, upon advising defendant of his right to counsel at arraignment, defendant stated that he "didn't think he needed an attorney . . . or wasn't sure that he wanted an attorney." The Town Justice testified that he listed the Public Defender's office to permit that office to do an intake and determine if defendant was eligible for services, to be sure that defendant could be represented when he appeared in court again. Defendant had been represented by the Public Defender's office on the charge that resulted in him being placed on probation, and an attorney from that office appeared with him at his next appearance on the violation of probation charge, which occurred after the two interrogations at issue. Given this equivocal evidence regarding representation, defendant did not meet

---

1. Defendant was also in jail on a resentence for harassment in the second degree, after failing to pay the fine that was his original sentence. Defendant does not contend that he was represented by counsel on that charge, and the transcript from his resentencing confirms the absence of counsel.

his burden of showing that he was represented on the probation violation charge at the time of questioning.

Even if—despite evidence to the contrary—the arraignment *memorandum* constituted assignment of counsel such that defendant was represented on that charge, there was no proof of entry by counsel. Entry requires "actual appearance or communication by an attorney" (*People v Grice*, 100 NY2d 318, 322 [2003]). The proof showed that defendant did not request counsel on the pending charge. Testimony and documents from the jail showed that the facility did not permit attorneys to call inmates due to a lack of personnel, and no one from the Public Defender's office visited defendant at any time prior to the questioning at issue. Before each interview, defendant signed a form agreeing to speak with police and acknowledging that he had a right to counsel, but he did not indicate to the police that he had counsel. Prior to the interview on July 29, 2008, the police called the District Attorney, who then called the Town Justice and confirmed that defendant did not request or have counsel on the violation of probation charge. Because defendant did not show that he was represented by counsel or entry by counsel, his rights were not violated (*see People v Blanchard*, 279 AD2d 808, 810 [2001], *lv denied* 96 NY2d 826 [2001]; *People v Vaughn*, 275 AD2d 484, 489 [2000], *lv denied* 96 NY2d 788 [2001]).

Additionally, the police were not required to Mirandize defendant prior to the July 27, 2008 interview because the questioning was investigatory rather than accusatory; defendant was not a suspect in the missing person case at that time and was merely being questioned for information that could help determine the victim's whereabouts (*see People v Winchell*, 98 AD2d 838, 839 [1983], *affd* 64 NY2d 826 [1985]; *see also Matter of Melinda I.*, 110 AD2d 991, 992 [1985]; *compare People v Ripic*, 182 AD2d 226, 231-232 [1992], *appeal dismissed* 81 NY2d 776 [1993]). Thus, County Court did not err in denying defendant's suppression motion.

County Court did not deny defendant his right to counsel after he requested new counsel. While a defendant is entitled to a different assigned counsel upon a showing of good cause (*see People v Porto*, 16 NY3d 93, 100 [2010]; *People v Nunez*, 35 AD3d 902, 903 [2006], *lv denied* 8 NY3d 883 [2007]), defendant's letter to the court contained generalized complaints about counsel. The court received the letter less than a week prior to trial, so any substitution in this complicated case would have delayed the trial for months. Defendant contends that the court deprived him of an opportunity to explain his concerns, but he

agreed with the court's advice that he should remain silent to protect his interests. Considering the lack of factual support for defendant's complaints and the timing of his request, along with counsel's adequate pretrial performance, the court did not deprive defendant of his right to counsel (*see People v Porto*, 16 NY3d at 100; *People v Linares*, 2 NY3d 507, 510-512 [2004]).

Defendant's convictions were not against the weight of the evidence.[2] When he was arrested, defendant was driving the victim's truck and possessed her debit card. Bank records show that the debit card was used numerous times in the city where defendant traveled. Defendant admitted that he used the card. Although defendant averred in one statement that he was allowed to use the card because the victim put some of his money in her bank account, he told the police in his first two statements that he used the card without the victim's permission. Contrary to his statements wherein he asserted that he bought the victim's truck from her and the receipt was above the visor, no such receipt was located in the vehicle, and the title in the vehicle was not signed over to him by the victim. Defendant told his friends that he was not supposed to have the victim's truck. He also told his half brother to sell the truck for scrap. This evidence supported the jury's verdict finding defendant guilty of both counts of criminal possession of stolen property in the fourth degree, for unlawfully possessing the victim's debit card and vehicle (*see* Penal Law § 165.45 [2], [5]).

The victim was last seen by a friend on July 3, 2008 and last worked on that day as well. She was scheduled to work the next day and several other days, but never showed up or called in to work. Around the time of her disappearance, defendant was driving the victim's truck and possessed her cell phone as well as her debit card. He called his half brother and asked how to dispose of a body. Consistent with the advice he received, the victim's body was buried beneath the body of an animal. Defendant left the area on July 6, 2008. When he saw his half brother, he first told a story about being attacked by the victim with a gun, but then stated that he shot her in the face. The pathologist who performed the autopsy on July 29, 2008 testified that the victim had been dead for at least a week, possibly as much as several weeks. The single gunshot to the head indicated an intentional killing. Defendant told police that ballistics would establish his innocence, but the police had not revealed that the victim had been shot.

---

2. To the extent that defendant challenges the legal sufficiency of the evidence on some counts, his arguments are unpreserved for our review (*see People v Gray*, 86 NY2d 10, 19-22 [1995]; *People v Nesbitt*, 69 AD3d 1109, 1110-1111 [2010], *lv denied* 14 NY3d 843 [2010]).

Defendant contends that evidence points to the victim's son as the culprit. The son moved out of the area on July 4, 2008 and sold his van for scrap around that time. He returned on July 7, 2008 for one day only, and was seen on the victim's property that day, although he also had lived there previously. At that time, the son sold a gun from the victim's camper, although that weapon was not used in this crime. The son could not reach the victim for several weeks, but did not report her missing to the police until July 28, 2008, when he returned to the area. He was seen coming from the victim's property with muddy clothes. He found the grave and dug up the dog and the victim, informing police after each discovery. Some of the son's statements to police contained inaccurate information. Despite this alternate theory posited by defendant, the proof showed that the son had no reason to kill his mother and they had a good relationship, with the only contrary evidence coming from defendant's self-serving and unsupported statements. Viewing the evidence in a neutral light and giving deference to the jury's credibility determinations (see People v Barringer, 54 AD3d 442, 443 [2008], lv denied 11 NY3d 830 [2008]), defendant's conviction for murder was not against the weight of the evidence.

Testimony from defendant's half brother about his advice to bury a human body beneath an animal makes it likely that defendant also killed the dog. One of defendant's friends testified that it looked like defendant had a dog bite on his wrist around the time that the victim disappeared. The bullets used to kill the victim and the dog were consistent with each other and with having been fired from a rifle located in the victim's camper. The wildlife pathologist who performed the necropsy testified that the dog had a full stomach and was in good health prior to death. This testimony dispelled the suggestion that the dog was put down because of illness, thus rendering the death unjustifiable. While defendant contends that the People failed to show "aggravated cruelty" as required by the statute, five shots to the head of a healthy dog—when any one of those shots would have been fatal—qualifies as conduct "carried out in an especially depraved or sadistic manner" (Agriculture and Markets Law § 353-a [1]; see People v Garcia, 29 AD3d 255, 261 [2006], lv denied 7 NY3d 789 [2006]). Thus, the jury's verdict was not against the weight of the evidence.

Peters, J.P., Spain, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.