People v Napoli (2018 NY Slip Op 08375)





People v Napoli


2018 NY Slip Op 08375


Decided on December 6, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 6, 2018

108986

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ERIC NAPOLI, Appellant.

Calendar Date: October 15, 2018

Before: McCarthy, J.P., Egan Jr., Devine, Clark and Aarons, JJ.


Tracy E. Steeves, Kingston, for appellant.
D. Holley Carnright, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.



MEMORANDUM AND ORDER
Devine, J.
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered April 29, 2016, upon a verdict convicting defendant of the crime of aggravated cruelty to animals.
Defendant shot his roommate's dog, Luna, to death and was thereafter indicted on one count of aggravated cruelty to animals. A jury trial ended with defendant being found guilty as charged, and County Court sentenced him to a prison term of two years. Defendant now appeals, and we affirm.
Defendant's general motion to dismiss failed to preserve his contention that the proof was legally insufficient to establish his guilt (see People v Hawkins, 11 NY3d 484, 492 [2008]), but "[w] e nevertheless review the proof adduced as to each element of the challenged crimes in light of defendant's assertion that the verdict was against the weight of the evidence" (People v Myers, 163 AD3d 1152, 1153 [2018], lv denied ___ NY3d ___ [Oct. 25, 2018]; see People v Danielson, 9 NY3d 342, 349 [2007]; People v Secor, 162 AD3d 1411, 1412 [2018], lv denied 32 NY3d 941 [2018]). As relevant here, a person commits "aggravated cruelty to animals when, with no justifiable purpose, he or she intentionally kills . . . a companion animal with aggravated cruelty,' which is defined as conduct 'intended to cause extreme physical pain . . . [or] done or carried out in an especially depraved or sadistic manner'" (People v Facey, 127 AD3d 1256, 1256 [2015], quoting Agriculture and Markets Law § 353-a [1]; see People v Moors, 140 AD3d 1207, 1208 [2016], lv denied 28 NY3d 934 [2016]).
Defendant acknowledged that he intentionally killed Luna, and the evidence reflected that he did so by shooting the previously healthy dog in the shoulder and the chest with a shotgun. According to defendant, he came home on the afternoon of April 16, 2015 to find that Luna had killed his cat. Defendant became enraged and took Luna outside, then informed his roommate, Carol Weller, that he would kill Luna unless she retrieved the dog and took it to the [*2]pound. Weller soon arrived on the scene and defendant repeated his ultimatum. The accounts of defendant and Weller diverged at this point, but Weller recounted telling defendant that she was not taking Luna to the pound, but that she was packing a bag and would soon be leaving with the dog. Defendant was displeased with this response and left the room where Weller was packing, after which Weller heard a gunshot and a yelp, followed by a second shot a few seconds later. She looked out the window to see "a big ball of fur on the ground" outside and, fearing that the armed defendant might come for her next, fled. The dog was exhumed after Weller contacted authorities, and a necropsy revealed that the shot to the chest caused significant and soon-to-be fatal injuries to Luna's heart, wind pipe and rib cage. Two veterinarians testified that the dog would have remained conscious for some time with these injuries, with both opining that the dog would have been in immense pain for the one or more minutes it took for blood loss and asphyxiation to cause Luna's death. The jury rejected defendant's self-serving testimony and credited the aforementioned proof that he executed Luna in Weller's hearing without any pressing reason to do so and, moreover, did so in a manner that inflicted extreme pain upon the dying animal. Thus, according deference to the jury's assessment of credibility, we cannot say that the verdict was against the weight of the evidence (see People v Moors, 140 AD3d at 1208-1209; People v Augustine, 89 AD3d 1238, 1242 [2011], affd 21 NY3d 949 [2013]).
We next turn to defendant's claims of ineffective assistance of counsel. Defense counsel entered into a stipulation that, among other things, provided for a pretrial suppression hearing and alerted County Court to the arguments for suppressing various statements and evidence. At the hearing, defense counsel extensively cross-examined one of the investigators who went to defendant's residence to retrieve the dog's body and other evidence, and defendant has not shown that counsel lacked "strategic or legitimate reasons for" declining to cross-examine a second investigator or expound upon the previously stated grounds for suppression (People v Cancer, 16 AD3d 835, 840 [2005], lv denied 5 NY3d 826 [2005]; see People v Flores, 84 NY2d 184, 187 [1994]; People v Perez, 156 AD3d 507, 508 [2017], lv denied 30 NY3d 1118 [2018]). As for the trial itself, defense counsel's theory of the case was that defendant did not intend to make the dog suffer and shot twice to kill it quickly, and counsel's failure to object to testimony regarding defendant's ownership of firearms and the admission of photographs depicting the dog's injuries may well have been meant to advance that reasonable trial strategy (see People v Ellis, 81 NY2d 854, 856-857 [1993]; People v Philbert, 267 AD2d 607, 607-608 [1999], lv denied 94 NY2d 905 [2000]). Likewise, although defense counsel rhetorically commented that "maybe the cat was never dead at all" in summation, he did so to argue that defendant's account of events was accurate but that no one had bothered to investigate it. The foregoing does not reveal ineffective assistance, and our review of "the evidence, the law, and the circumstances" of the case in its entirety leaves no doubt that defense counsel provided meaningful representation (People v Baldi, 54 NY2d 137, 147 [1981]).
Finally, the jury asked for a definition of "extreme" during its deliberations, and County Court responded with the dictionary definition of that word except for those portions that "everybody agree[d] [were] not applicable." Defendant now complains about that response but, to the extent his contention is preserved for our review, we find that County Court's charge as a whole conveyed the correct standard and was not misleading (see People v Medina, 18 NY3d 98, 104 [2011]; People v Maher, 89 NY2d 456, 464 [1997]).
McCarthy, J.P., Egan Jr., Clark and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.