People v Kalabakas (2020 NY Slip Op 02954)





People v Kalabakas


2020 NY Slip Op 02954


Decided on May 21, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 21, 2020

111742

[*1]The People of the State of New York, Respondent,
v
Vasilios Kalabakas, Appellant.

Calendar Date: March 24, 2020

Before: Clark, J.P., Mulvey, Devine, Pritzker and Colangelo, JJ. 


Steven M. Sharp, Albany, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Colangelo, J.
Appeal from a judgment of the Supreme Court (Lynch, J.), rendered February 7, 2019 in Albany County, upon a verdict convicting defendant of the crimes of criminal possession of controlled substance in the first degree, criminal possession of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree (three counts), criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the seventh degree, and the violation of unlawful possession of marihuana.
On March 15, 2018 at approximately 10:27 p.m., State Trooper Daniel Mauro effected a traffic stop on Interstate 87 in Albany County of a vehicle with darkly tinted windows that was being driven erratically by its owner, Ernesto Bocio, in which defendant was a passenger. Upon approach, Mauro detected the strong odor of burnt and raw marihuana coming from both sides of the vehicle, observed marihuana shake — flakes of vegetation — on defendant and Bocio's shirts and inside the vehicle, and discovered that Bocio was driving with a suspended license. Bocio and defendant were asked to exit the vehicle, were observed to be very nervous and provided somewhat inconsistent accounts of their travel plans, although both indicated that they were headed to the City of Buffalo, Erie County. Bocio admitted to smoking marihuana earlier and was found to be in possession of cocaine and $4,000 in cash. During a search of defendant, he became uncooperative, and both defendant and Bocio were put in handcuffs for officer safety. A search of the vehicle by Mauro and another trooper disclosed several bags of cocaine, crack cocaine and heroin, a bag of pills identified as Alprazolam, a controlled substance, and a bag of leafy marihuana, all secreted in a hidden after-market compartment in the dashboard. The street value of the controlled substances, described by police investigators trained in drug trafficking practices as uncut and pure, was estimated to be in the hundreds of thousands of dollars after mixing in fillers and packaging it for sale. Also found in the compartment were a loaded, operable semi-automatic .40 caliber pistol and tobacco leaves used to roll marihuana joints. An iPhone, a flip-phone and Bocio's wallet were also recovered from the front center console of the vehicle next to the shift. Defendant and Bocio were then arrested. It was later determined that the hidden compartment was mechanically operable using a magnet found in Bocio's wallet.
Defendant was thereafter charged, in a joint indictment with Bocio, with one count each of the crimes of criminal possession of a controlled substance in the first, second, fifth and seventh degrees, three counts of criminal possession of a controlled substance in the third degree and one count of criminal possession of a weapon in the second degree, as well as the violation of unlawful possession of marihuana. Supreme Court denied defendant's motion to suppress his statements to police and the physical evidence seized from the vehicle, but granted defendant's motion for a separate trial and the matter proceeded to a jury trial. Upon the People's motion, the court dismissed the charge of criminal possession of a controlled substance in the fifth degree, and defendant was convicted of the remaining charges. Defendant was sentenced for his conviction of criminal possession of a controlled substance in the first degree to a prison term of eight years, followed by five years of postrelease supervision, and to lesser concurrent prison terms followed by periods of postrelease supervision for the remaining felony convictions.[FN1] Defendant appeals.
We affirm. Initially, we are unpersuaded by defendant's contention that count 1 of the indictment — charging criminal possession of a controlled substance in the first degree —impermissibly combined his possession of heroin and cocaine to satisfy the eight-ounce aggregate weight threshold element of that crime and was, therefore, facially duplicitous. Contrary to the People's contention, this challenge was preserved by defendant's pretrial motion to dismiss the indictment as duplicitous. In response, the People specifically objected to dismissal by arguing that count 1 properly aggregated the weight of two narcotic drugs found in defendant's possession to reach the weight threshold. Although the record does not reflect that Supreme Court expressly ruled on this aspect of defendant's motion, given that defendant timely filed a motion raising this claim and seeking a ruling, he "is deemed to have thereby protested the court's . . . failure to rule . . . sufficiently to raise a question of law with respect to such . . . failure regardless of whether any actual protest thereto was registered" (CPL 470.05 [2]).[FN2] Addressing the merits, defendant's challenge to count 1 does not withstand analysis. As relevant here, criminal possession of a controlled substance in the first degree requires proof that defendant knowingly and unlawfully possessed "one or more . . . substances containing a narcotic drug and said . . . substances are of an aggregate weight of eight ounces or more" (Penal Law § 220.21 [1] [emphases added]).[FN3] To the extent that defendant's challenge appears to be one of statutory interpretation, it lacks merit, as that subsection contemplates that a person can be charged with possessing more than one narcotic drug and that the weights of the narcotics may be combined to reach the threshold weight requirement. This is supported by the use of the plural "one or more . . . substances" that contain "a narcotic drug," and that "said . . . substances" must have the requisite weight (Penal Law § 220.21 [1] [emphasis added]). This statute does not, on its face, require possession of a single narcotic drug and, instead, by its terms, permits prosecution for possession of more than one substance, each containing "a narcotic drug." Thus, the singular phrase, "a narcotic," refers to what must be found in each of the "one or more substances" possessed, and does not require that the narcotic be the same in each of the substances. As such, "giving effect to the plain meaning [of the statutory text" (People v Roberts, 31 NY3d 406, 418 [2018] [internal quotation mark and citation omitted]; accord People v Wager, 173 AD3d 1352, 1353 [2019], lv denied 34 NY3d 1020 [2019]), we find that the statutory language permits the substances possessed to contain either the same or different narcotics.
With regard to defendant's claim of duplicity as to count 1, a "count is duplicitous when it charges more than one crime that is completed by a discrete act in the same count" (People v Madsen, 168 AD3d 1134, 1137 [2019]; see People v Alonzo, 16 NY3d 267, 269 [2011]). Count 1 charged defendant with "possess[ing] a substance containing cocaine, a narcotic drug, and a substance containing heroin, a narcotic drug, with an aggregate weight of eight (8) ounces or more" (emphasis added). We conclude that this count was not facially duplicitous as it did not charge more than one crime committed by discrete acts but, rather, charged defendant with one crime, i.e., simultaneously possessing two narcotic drugs, cocaine and heroin, in substances whose combined weight satisfied the statutory threshold.
To that end, Penal Law § 220.20 (1), like other drug possession statutes (see Penal Law art 20), "does not distinguish between the types of narcotics possessed, but treats all drugs classified as narcotics interchangeably" (People v Martin, 153 AD2d 807, 808 [1989], lv denied 74 NY2d 950 [1989]; see Penal Law § 220.00 [7]). Thus, it has been recognized that "there is no basis for multiple counts [of criminal possession of narcotics with intent to sell] under [Penal Law § 220.16] based on the fact that the narcotics [possessed upon arrest] happen to be of different types" (People v Martin, 153 AD2d at 808; see People v Miller, 15 AD3d 265, 265 [2005], lvs denied 4 NY3d 833, 833 [2005]; People v Moldanado, 271 AD2d 328, 328 [2000], lv denied 95 NY2d 867 [2000]; People v Eustate, 265 AD2d 229, 230 [1999], lv denied 94 NY2d 919 [2000]). We discern nothing impermissible with combining the weight of the substances containing more than one narcotic that defendant simultaneously possessed to reach the statutory aggregate weight (compare People v Brown, 99 NY2d 488, 493 [2003]). Importantly, the gravamen of this highest grade of criminal possession of a controlled substance is the aggravating factor, i.e., the knowing possession of narcotic-laden substances with an aggregate weight of eight ounces or more, and the seriousness of defendant's conduct is not altered or reduced by the fact that he simultaneously possessed substances containing more than one type of narcotic (see People v Buckley, 75 NY2d 843, 846 [1990] [simultaneous possession of stolen property belonging to multiple victims can be considered one offense and the value of the property aggregated to constitute an enhanced charge of criminal possession of stolen property]).
Defendant's argument that, aside from facial duplicity, the trial evidence rendered count 1 duplicitous is not preserved for our review (see People v Allen, 24 NY3d 441, 449 [2014]). In any event, the evidence at trial did not demonstrate that "multiple criminal acts occurred" when defendant constructively possessed the narcotics, and there was no concern regarding juror unanimity (People v Gannon, 174 AD3d 1054, 1057 [2019], lv denied 34 NY3d 980 [2019]; see People v Alonzo, 16 NY3d at 270; compare People v Hilton, 166 AD3d 1316, 1319 [2018], lv denied 32 NY3d 1205 [2019]). To that end, the forensic testimony established that the substances that defendant possessed contained 6.388 ounces of cocaine and 2.10 ounces of heroin and, thus, neither alone satisfied the aggregate weight threshold. Accordingly, in convicting defendant on this count, the jury necessarily concluded that he possessed substances containing both narcotics and did not selectively chose one or the other.
Defendant's challenge to Supreme Court's denial of his motion to suppress the physical evidence recovered from the vehicle is likewise without merit. Defendant does not dispute that Mauro had authority to stop the vehicle based upon, among other things, Bocio's erratic driving and the vehicle's very dark tinted windows (see Vehicle and Traffic Law § 375 [12-a] [b] [2]; People v Brown, 169 AD3d 1258, 1259 [2019], lv denied 33 NY3d 1029 [2019]; People v Banks, 148 AD3d 1359, 1360 [2017]; People v Cuffie, 109 AD3d 1200, 1201 [2013], lv denied 22 NY3d 1087 [2014]). He also concedes that the troopers had probable cause to search him, Bocio and the vehicle given the troopers' detection — based upon their training and experience — of the strong odor of marihuana emanating from the vehicle and observations of marihuana "shake" on their shirts, among other factors (see People v Sostre, 172 AD3d 1623, 1624 [2019], lv denied 34 NY3d 938 [2019]; People v Dolan, 165 AD3d 1499, 1500-1501 [2018]; People v Francois, 138 AD3d 1165, 1166 [2016]; People v Souffrant, 93 AD3d 885, 887 [2012], lv denied 19 NY3d 968 [2012]; People v Horge, 80 AD3d 1074, 1074-1075 [2011]). Defendant argues, however, that the scope of the search to include the hidden compartment was not reasonable under the circumstances. However, "[w]here the search of a vehicle is justified by probable cause, officers may also search any of the contents of the vehicle that may conceal the contraband sought" (People v Francois, 138 AD3d at 1166, citing United States v Ross, 456 US 798, 825 [1982]; see People v Dolan, 165 AD3d at 1166; People v Kaid, 163 AD3d 1151, 1151-1152 [2018], lv denied 32 NY3d 1005 [2018]).[FN4] Further, the Fourth Amendment protects against "unreasonable searches and seizures" (US Const, 4th Amend) and, as such, warrantless searches are governed by a reasonableness standard (see People v Diaz, 33 NY3d 92, 98 [2019], cert denied ___ US ___, 104 S Ct 394 [2019]); we find that the People satisfied their burden of demonstrating that the search of the vehicle was reasonable (see People v Jimenez, 22 NY3d 717, 721 [2014]).
At the suppression hearing, the troopers involved in the search testified that, during an inspection of the glove box and dashboard, they noticed a panel in the dashboard under the glove box that contained mismatched and stripped screws and that a removable panel next to it had been glued shut. After taking out a removable trim piece in the dashboard, the stripped screws fell out, and the troopers were able to see several plastic bags containing drugs and the firearm in the hidden compartment. Another panel was temporarily removed to gain access to the hidden contraband. Contrary to defendant's claim, the troopers' search of the conspicuous hidden compartment was justified and did not cause damage or involve "tearing apart the glove compartment area," and all panels removed during the search could be reattached (compare People v Gomez, 5 NY3d 416, 422 [2005]).
Defendant further argues that the convictions are not supported by legally sufficient evidence and are contrary to the weight of the evidence. He focuses on the limited direct evidence connecting him to the drugs and gun found in the hidden compartment which, he contends, failed to establish his knowing possession of those items. Although defense counsel moved for a trial order of dismissal of all counts on this ground at the close of proof,[FN5] he conceded that the automobile presumption applied to the controlled substances found in that compartment, providing presumptive evidence of defendant's knowing possession (see Penal Law § 220.25 [1]). Accordingly, defendant's legal sufficiency challenge is preserved only with regard to his convictions of criminal possession of a weapon in the second degree and unlawful possession of marihuana (see People v Henry, 173 AD3d 1470, 1473 n 2 [2019], lv denied 34 NY3d 932 [2019]).[FN6] In any event, in conducting our weight of the evidence review for all of the convictions, we necessarily examine the evidence to ensure that each element of the charged crimes was proven beyond a reasonable doubt (see People v Vega, 170 AD3d 1266, 1267 [2019], lv denied 33 NY3d 1074 [2019]).
"When reviewing a legal sufficiency claim, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime[s] charged" (People v Henry, 173 AD3d at 1473 [internal quotation marks and citations omitted]). Criminal possession of a weapon in the second degree required proof that defendant knowingly possessed a loaded firearm outside of his home or business (see Penal Law § 265.03 [3]). As defendant was not found to be in physical possession of the firearm or controlled substances, "constructive possession can be established upon a showing that he . . . exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found" (People v Colon, 177 AD3d 1086, 1087 [2019] [internal quotation marks and citation omitted]; see Penal Law § 10.00 [8]). Further, aside from certain exceptions not applicable here, under the automobile presumption applicable to firearms, "[t]he presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found" (Penal Law § 265.15 [3]; see People v Rawlinson, 170 AD3d 1425, 1427 [2019], lv denied 33 NY3d 1107 [2019]).
The testimony of the troopers involved in the investigation established that the loaded firearm found in the hidden compartment was determined to be operable. Defendant's dominion and control over the compartment and, thus, his constructive possession of the firearm and the contents of the compartment were established by facts showing his ability to exercise control over an area located directly in front of where he was sitting. The magnet that opened the hidden compartment was in Bocio's wallet in the center console, easily accessible to defendant. Notably, "[i]t is not necessary that the defendant ha[d] exclusive access to the area where the loaded firearm was discovered" to establish his or her constructive possession, which "'may be established through circumstantial evidence'" (People v Sloley, 179 AD3d 1308, 1309 [2020], quoting People v Jemmott, 164 AD3d 953, 956 [2018], lv denied 32 NY3d 1112 [2018]). Further, when the vehicle was stopped, a strong odor of marihuana emanated from both sides of the vehicle, marihuana shake was visible on both defendant's and Bocio's shirts and on the seats and floor inside the car, and defendant provided improbable reasons for the shake and admitted to police that Bocio had smoked marihuana in the vehicle earlier during their trip. This was significant because the bagged marihuana and rolling papers were found exclusively in the compartment, permitting the inference that the compartment had been accessed during their trip to retrieve and store the bag of marihauna and that defendant, therefore, was aware of what was in the compartment and had access to and control over it. Viewing the evidence most favorably to the People and affording them all permissible inferences, applying both the automobile presumption and principles of constructive possession, we find that defendant's conviction of criminal possession of a weapon in the second degree is supported by legally sufficient evidence, as is his conviction of the marihuana violation (see People Bleakley, 69 NY2d 490, 495 [1987]; People Henry, 173 AD3d at 1474).
Turning to defendant's challenge to the weight of the evidence, we must "view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Henry, 173 AD3d at 1473 [internal quotation marks and citations omitted]). Given defendant's denial, in an interview with police, that he knew that the hidden compartment existed or about its contents and the lack of direct proof that he knew about and possessed the contraband and weapon found therein, a different verdict would not have been unreasonable. Pertinent here, the controlled substance charges all required that defendant knowingly and unlawfully possessed the drugs found in the vehicle. Under the applicable automobile presumption, where the drugs were not found on the person of either occupant, "[t]he presence of a controlled substance in an automobile . . . is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found" (Penal Law § 220.25 [1]; see People v Nelson, 156 AD3d 1112, 1115 [2017], lvs denied 31 NY3d 1145, 1151, 1152 [2018]). To rebut that presumption, defendant denied knowing that the compartment existed or of its contents and claimed that he was merely a passenger in the vehicle who had taken an unplanned ride with Bocio, unaware of his specific reasons for going to Buffalo or that drugs and a firearm were in the vehicle. Defendant points to the fact that the vehicle was owned and operated by Bocio and that none of the DNA evidence linked him to the contents of the compartment, and an analysis of DNA found on the firearm indicated that Bocio was a possible contributor. However, defendant's admission that Bocio had smoked marihuana in the vehicle during their ride, combined with the fact that all of the marihuana and rolling papers were stored in the compartment and marihuana shake was on their shirts and all over the inside of the car, supports the inference that the compartment was accessed during the trip and defendant was aware of its contents.
Further, defendant admitted that he had known Bocio for years and that, as a favor, he had driven a different vehicle to Buffalo on March 6, 2018, the weekend prior to this incident, purportedly to show that vehicle to a prospective buyer, but claimed not to have connected with the person. When defendant was stopped by police in the Capital District on that return trip, he was found to be driving with a suspended license and the vehicle was impounded; Bocio paid about $1,000 to have the vehicle towed back to the Bronx on March 8, 2018, with defendant present. Defendant admitted that Bocio had given him his iPhone [FN7] to use for GPS purposes on that trip, the same iPhone found in the vehicle when stopped by Mauro on March 15, 2018, and the forensic evidence demonstrated that defendant used that phone to arrange the return of the vehicle to Bocio the prior weekend. Defendant had provided the towing company with two phone numbers for himself, one of which he also provided to police during his interview and both of which were listed as contacts in the iPhone under a pseudonym very similar to defendant's name, which the People convincingly demonstrated was defendant; the flip-phone found in the vehicle also contained one of those phone numbers listed as a contact under that same pseudonym. Moreover, Bocio's iPhone, with which he had entrusted defendant on an out-of-town trip the week prior to this stop, contained text messages and pictures connecting Bocio to drug transactions and large quantities of drugs and cash, supporting the inference that defendant was aware that Bocio was engaged in drug activity.
Although defendant told police that his purpose in going with Bocio all the way to Buffalo on March 15, 2018 was to retrieve his driver's license being held by the towing company in the Capital District, this account was not credible particularly given the towing company owner's testimony that the company never held on to licenses when they towed vehicles. Further, the evidence was unrefuted that the drugs were analyzed and tested positive for the requisite aggregate weight of heroin (59.6 grams, over two ounces) and cocaine (181.1 grams, over six ounces), and the pills were identified as Alprazolam. Defendant's intent to sell, an element of the charges for criminal possession of a controlled substance in the third degree (see Penal Law § 220.16 [1]), was readily inferable from the State Police investigator's testimony that the heroin and cocaine were uncut and of a pure quality, and from the vast quantity of the drugs that the investigator estimated had a street value after being cut in the hundreds of thousands of dollars (see People v Wheeler, 159 AD3d 1138, 1139-1140 [2018], lv denied 31 NY3d 1123 [2018]). After evaluating the evidence in a neutral light and according appropriate deference to the jury's factual assessments and credibility determinations, we are satisfied that the verdict is supported by the weight of credible evidence (see People v Sloley, 179 AD3d at 1310; People v Colon, 177 AD3d at 1088).
Defendant further argues that Supreme Court erred in permitting the People to introduce evidence extracted from Bocio's iPhone pursuant to a search warrant. To the extent that defendant claims that the contents of the iPhone constituted improper Molineux evidence, this was not part of or addressed during the People's Molinuex proffer, and defendant did not make this argument during pretrial challenges to this evidence or at trial — when the scope and admissibility of this evidence were again addressed; thus, this claim is not preserved for our review (see People v Haynes, 177 AD3d 1194, 1197 n 3 [2019], lv denied 34 NY3d 1128 [2020]).[FN8]
Defendant also challenges the testimony regarding the content of the iPhone on hearsay and relevancy grounds. On direct examination of Mauro regarding the extracted contents of the iPhone, the People elicited testimony that was temporally limited to defendant's trip to Buffalo the week earlier, during which he admittedly used the iPhone (March 6 through 8, 2018), and from the day of this arrest (March 15, 2018). This was relevant to disputed material issues, including defendant's knowledge and intent, and the absence of mistake, and to establish his relationship with Bocio, their common scheme and plan and their communication just prior to this trip (see People v Leonard, 29 NY3d 1, 6-7 [2017]; People v Baber, ___ AD3d ___, ___, 2020 NY Slip Op 02294, *4 [2020]; People v Conway, 179 AD3d 1218, 1219 [2020]). However, when defense counsel cross-examined Mauro, he elicited broader testimony regarding the content of the iPhone, including some that predated March 6, establishing that the iPhone contained pictures showing Bocio, but not defendant, with large quantities of controlled substances and cash. Counsel also elicited that none of the extracted content suggested that defendant was distributing drugs or was aware that there were drugs in the vehicle on March 15. As a result, Supreme Court concluded that the defense had opened the door to testimony regarding extracted content that predated March 6. We find that the court did not abuse its discretion in permitting the People to question a police investigator regarding messages and photographs extracted from the iPhone which, significantly, connected Bocio to drug transactions but also permitted the inference that defendant knew of Bocio's activity (see People v Leonard, 29 NY3d at 7; People v Mateo, 2 NY3d 383, 425 [2004], cert denied 524 US 946 [2004]).
With regard to the admission of hearsay statements from the iPhone, including those attributed to Bocio, we agree with defendant that Supreme Court erred in admitting them under the coconspirator exception to the hearsay rule. Such evidence is admissible only where the People first make a prima facie case of conspiracy — that there was an agreement to commit a crime and an overt act — without recourse to the declarations of Bocio, which we find they did not do (see People v Caban, 5 NY3d 143, 148 [2005]; People v Trappler, 173 AD3d 1334, 1337-1338 [2019], lv denied 34 NY3d 985 [2019], cert denied ___ US ___ [Mar. 2, 2020]; People v Cancer, 16 AD3d 835, 839 [2005], lv denied 5 NY3d 826 [2005]). However, given the overwhelming evidence of defendant's guilt, the error in admitting this evidence was harmless. We are satisified that there is no significant probability that the jury would have acquitted defendant had this evidence not been admitted (see People v Crimmins, 36 NY2d 230, 242 [1975]; People v Johnson, 176 AD3d 1392, 1396 [2019], lvs denied 34 NY3d 1129, 1131 [2020]).
Finally, defendant raises a litany of alleged errors by defense counsel that he contends deprived him of the effective assistance of counsel. To the extent that defendant's contentions concern matters outside of the record, such as whether counsel reviewed certain evidence or considered specific issues, they are more properly raised in the context of a CPL article 440 motion to vacate (see People v Schmidt, 179 AD3d 1384, 1385 [2020]; People v Taylor, 156 AD3d 86, 89-92 [2017], lv denied 30 NY3d 1120 [2018]). "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Santana, 179 AD3d 1299, 1302 [2020] [internal quotation marks and citations omitted]). Defendant argues that counsel did not provide meaningful representation in that he failed, among other things, to object to certain hearsay testimony or challenge the search warrants for the seized cell phones. However, the record reflects that defendant denied knowledge or possession of the contents of the compartment and pointed to Bocio as solely responsible, which coincided with defense counsel's trial strategy. Defendant has not demonstrated, on this record, the absence of strategic reasons for defense counsel's conduct (see id. at 1302-1303; People v Cowan, 177 AD3d 1173, 1178 [2019], lv denied 34 NY3d 1127 [2020]) or that, had counsel made the motions or taken the actions defendant now points to, there was any likelihood of success (see People v Caban, 5 NY3d at 152; People v Watkins, 180 AD3d 1222, 1223-1234 [2020]; People v Richardson, 162 AD3d 1328, 1331-1332 [2018], lv denied 32 NY3d 1128 [2018]). Viewing the overall record, we find that counsel provided a vigorous and cogent trial strategy, albeit one ultimately not credited by the jury, that defendant was an innocent passenger in the vehicle, made appropriate pretrial motions, and effectively cross-examined witnesses and challenged the scope of the evidence admitted, thereby providing defendant with meaningful representation (see People v Caban, 5 NY3d at 152; People v Santana, 179 AD3d at 1302-1303). Defendant's remaining claims have been examined and found to be without merit.
Clark, J.P., Mulvey, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant was sentenced to time-served on the misdemeanor and violation convictions.

Footnote 2: This issue was again addressed just prior to jury selection, when the People made clear that they were aggregating the weights of the cocaine and heroin under count 1, in the context of defendant's unsuccessful challenge to the sufficiency of the evidence before the grand jury with regard to that count.

Footnote 3: "'Aggregate' weight refers to the weight of the substance which contains the drug, irrespective of the amount of the drug in the substance," whereas "'[p]ure' weight refers only to the actual amount of the drug itself, irrespective of whether it is included in another substance" (William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 220.00 at 24).

Footnote 4: The People's reliance upon the automobile exception to the Fourth Amendment's search warrant requirement to justify the search of the hidden compartment is misplaced, as the search of the vehicle here occurred prior to the arrest of defendant or Bocio, who were only arrested after the contraband was found in the hidden compartment (see People v Galak, 81 NY2d 463, 466-467 [1993]; People v Raghnal, 135 AD3d 1168, 1169 [2016], lv denied 27 NY3d 1137 [2016]). Although Mauro arguably could have arrested Bocio and impounded his car due to his driving with a suspended license, among other grounds, he did not testify that this was his intent at the time that he conducted the search so as to render the search incident to his arrest (see People v Reid, 24 NY3d 615, 619 [2014]; People v Walker, 20 NY3d 122, 125-127 [2012]).

Footnote 5: After the People rested, defendant unsuccessfully moved to dismiss the charges based upon legal insufficiency of the evidence on this ground and then rested without submitting any direct evidence or testimony. Thus, when the People rested, it was at "the conclusion of all the evidence" (CPL 290.10 [1]) and defendant was not required to renew his motion to dismiss after he rested (cf. People v Kolupa, 13 NY3d 786, 787 [2009]; People v Hines, 97 NY2d 56, 61 [2001]; People v Kirkpatrick, 32 NY2d 17, 21 [1973]).

Footnote 6: The automobile presumption does not apply to unlawful possession of marihuana (see People v Wallace, 153 AD3d 1632, 1633 [2017]).

Footnote 7: Although police were unable to obtain subscriber information for the iPhone, it was undisputed at trial that it belonged to Bocio.

Footnote 8: Defendant did not preserve his present claim that evidence regarding his trip to Buffalo the week before this arrest constituted improper Molineux evidence (see People Hayes, 177 AD3d 1194, 1197 n 3 [2019], lv denied 34 NY3d 1128 [2020]). Were we to address this claim, we would find that the information was not evidence of uncharged conduct and, in any event, was properly admitted as relevant to the charges and inextricably intertwined with defendant's statement to police with regard to why he was traveling with Bocio to Buffalo at the time of this arrest, and that this information completed the narrative and was required background information (see People v Morris, 21 NY3d 588, 600 [2013]).