THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARNOLD JACKSON, Appellant.—Appeals by defendant from four judgments of the Supreme Court, Suffolk County, all rendered July 17, 1978, convicting him of sodomy in the first, second and third degrees and attempted sodomy in the second degree, upon jury verdicts, and imposing sentences. The appeals bring up for review the denial of a motion to suppress certain physical evidence. Judgments reversed, on the law and the facts, motion to suppress certain physical evidence granted, and new trial ordered. On June 13, 1977 the father of one of the infant complainants, Mr. Rentas, confronted defendant and accused him of improper behavior with his son. Mr. Rentas held the defendant with his back against a car by putting a forearm against the defendant's chest. Police Officer Accomando came to the scene and asked Mr. Rentas to release defendant. After hearing the explanations offered by various parties, the police officer asked everyone to accompany him to the police station. Defendant traveled to the police station with Officer Accomando. The officer did not notice defendant having any problem getting into the car nor did the defendant complain that any injuries were inflicted by Mr. Rentas. Defendant arrived at the detective squad headquarters at about 9:10 P.M. and was placed in an interview room. The infant complainant made a statement which accused defendant of an act of forcible sodomy. At about 10:00 P.M., Detective Laghezza asked defendant whether he wanted to discuss what had happened and defendant denied any knowledge of the incident. Laghezza left defendant and worked until 11:15 P.M. reducing the infant complainant's statement to writing. At 11:15 P.M. defendant was brought out of the interview room to the squad room. In the course of Detective Laghezza's taking a pedigree, defendant grabbed his side. In response to Laghezza's inquiry, defendant stated that he fell over a chair in the interview room but he was all right. After being confronted with police knowledge of his two prior sodomy convictions and the statement of the infant complainant, defendant made an oral admission which was never reduced to writing. Defendant refused to sign a written statement. It is significant that the defendant thereafter signed a consent form for a search of his apartment, though Detective Laghezza could not recall whether this was before or after defendant was confronted with the infant complainant's

statement. The search took place immediately and a personal telephone directory was recovered which contained among others the names, addresses and birth dates of a number of boys and obscene remarks referring to his relations with a certain boy. Detective Laghezza urged him to tell everything and defendant made an oral admission to sodomizing three other boys. At about 1:00 A.M., defendant was taken to the precinct to be lodged. Sergeant Harsh, the watch commander, observed bruises on the defendant. There were also red welts the size of a quarter across the breast and on the back from the armpit to the stomach. Defendant complained of rib pain. Harsh arranged for defendant to be brought to the hospital. There was an admitting diagnosis of possible fractured ribs and possible ruptured spleen. Defendant was charged in four separate indictments with acts of sodomy. At the suppression hearing a number of police officers testified. They denied injuring defendant except to the extent that one officer admitted pushing defendant into a chair after defendant refused to sit down at about 10:00 P.M. All the officers stated that when at anytime during the interrogation defendant was asked how he was injured, he said he had fallen over a chair. Defendant repeated this to Sergeant Harsh and to the admitting officials at the hospital. Defendant testified that he was severely beaten by several officers. He only agreed to the search and made the admissions out of fear of further beatings. Moreover, he told anyone who inquired that he fell over a chair because there were always policemen with him and he was fearful. The trial court suppressed defendant's oral statements but not the personal telephone directory. The court distinguished the two by saying defendant's consent to the search of his apartment was voluntary and an effort to be cooperative. The trial court permitted joinder of the indictments for trial pursuant to CPL 200.20 (subd 2, par [c]), over defendant's objection. We reverse the judgments of conviction. The personal telephone directory should have been suppressed. There were unexplained physical injuries sustained by the defendant while in police custody. The denials by the police officers that they inflicted the injuries is not a sufficient explanation (*People v Yarter*, 41 NY2d 830; *People v Valletutti*, 297 NY 226). Moreover, on the facts presented, such denials are incredible. Defendant was not injured by Mr. Rentas nor did Police Officer Accomando notice any injuries when defendant entered the police car. Yet, some four hours later defendant had injuries severe enough for the watch commander to send defendant directly to the hospital. The one incident of physical contact admitted to by the police occurred prior to defendant's signing the consent form. Defendant's own testimony at the suppression hearing indicated that substantial injuries were inflicted prior to signing the consent. An examination of the law on voluntary consent shows that the People failed to establish voluntariness (cf. *Shneckloth v Bustamonte*, 412 US 218). Custody alone would not suffice to render defendant's consent invalid (*United States v Watson*, 423 US 411). However, custody makes the prosecution's burden heavy and interrogation in custody makes it particularly so (2 La Fave, Search & Seizure, § 8.2, subd [b]). If the criteria established by the Court of Appeals in *People v Gonzalez* (39 NY2d 122) are examined, the People have failed to establish voluntary behavior. There the court stated that custody is usually contradictory of the capacity to exercise free will as is confronting an individual with a large number of police. The education and background of an individual are relevant. Also, a court should consider whether the person who consents has been uncooperative or evasive prior to that time. Here defendant was interrogated at a police station. The questioning took place in the large detective squad room where all the officers had their desks. Defendant

testified that he was beaten by several officers. As to background, defendant did have two prior convictions but had only a seventh grade education. Up to the time that defendant signed the consent he had consistently denied his guilt. A second ground for reversal is the trial court's permitting joinder of the indictments for trial pursuant to CPL 200.20 (subd 2, par [c]). Although the ruling of the court in permitting joinder came within the letter of the statute since the charges were similar in law, it was an abuse of discretion to do so. The potential for prejudice, especially on charges of this type with infant complainants, was so egregious as to outweigh the convenience to the People. In addition, we reject the People's contention that joinder would be proper on the theory of common plan or scheme (see *People v Molineux*, 168 NY 264; Richardson, Evidence [10th ed], § 179). Damiani, J. P., Gibbons, Gulotta and Martuscello, JJ., concur.