(January 25, 1996)

■ The People of the State of New York, Respondent, v Ronnie Sledge, Appellant. [636 NYS2d 930] —Mikoll, J. Appeal from a judgment of the County Court of Tompkins County (Barrett, J.), rendered July 1, 1992, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and conspiracy in the second degree.

The instant appeal stems from a murder for hire scheme. The indictment charged defendant and codefendants Kenneth Augustine and Chris Clemons with murder and other crimes

in the stabbing death of Eugene Slater. Clemons pleaded guilty and turned State's evidence. Defendant and Augustine were tried together.* Defendant was found guilty of two counts of murder in the second degree and one count of conspiracy in the second degree, and was sentenced to 25 years to life imprisonment on each of the murder counts and 5 to 15 years for conspiracy in the second degree. All sentences are to be served concurrently. Clemons was sentenced to 5 to 15 years on his plea. Augustine was found guilty of one count of murder in the second degree and one count of conspiracy in the second degree.

As far as can be gleaned from defendant's brief, his first contention on appeal is that County Court erred in failing to grant defendant's motion to dismiss the indictment as legally insufficient. We disagree. The indictment cites each statute that defendant was charged with violating and tracks the language of the statutes. The Court of Appeals in *People v Cohen* (52 NY2d 584, 586) declared that "[t]he incorporation by specific reference to the statute operates without more to constitute allegations of all the elements of the crime required by explicit provision[s] of the statute itself or by judicial gloss overlaid thereon, if any, for conviction under that statute". We thus conclude that the indictment is sufficient on its face.

Defendant also challenges the sufficiency of evidence before the Grand Jury in a general way, but fails to particularize what was lacking before the Grand Jury. Since we also conclude in this decision that defendant's conviction is supported by legally sufficient evidence, the denial of defendant's motion as to the adequacy of proof before the Grand Jury is not reviewable by this Court (*see*, CPL 210.30 [6]).

On the question raised by defendant as to the legal sufficiency of the trial evidence, we note that defendant was convicted of two counts of murder in the second degree and one count of conspiracy in the second degree. The first count of murder required a showing that "[w]ith intent to cause the death of another person, he [or she] causes the death of such person or of a third person" (Penal Law § 125.25 [1]). The second count of murder requires a showing that "[a]cting either alone or with one or more other persons, he [or she] commits or attempts to commit robbery [or] burglary * * * and, in the course of and in furtherance of such crime * * * he [or she] * * * causes the death of a person other than one of the participants" (Penal Law § 125.25 [3]).

---

* Augustine's appeal has not yet been perfected.

The evidence discloses that a person fitting defendant's description and carrying a medium-sized brown package was seen walking toward decedent's house moments before the murder occurred. Such a package, containing defendant's palm prints, was found at the murder scene. Decedent's mother was able to describe the perpetrator as a black man, under 5 feet, 8 inches in height, which accords with defendant's height. Clemons, an admitted accomplice in the crime, testified to the plan that he entered into with defendant, which was to go to decedent's house and to get money from him. Clemons further testified that he drove defendant to decedent's house in a car owned by Robert Farley on the morning of the murder, and that defendant disembarked, carrying a medium brown package, and walked to decedent's house; when defendant returned a short time later without the package, his pants were blood stained and he told Clemons that he had obtained money from decedent. Farley testified to a conversation with Clemons, which was to the same effect as Clemons' trial testimony about the events of the day of the murder. Farley also said that Clemons had used his car on the morning of the murder and that defendant warned him not to say anything to anyone about the murder. Farley further testified that defendant admitted killing decedent.

Viewing the evidence in a light most favorable to the People, as we must (*see, People v Alexander,* 75 NY2d 979, 980), we conclude that the evidence adduced at trial was sufficient to convict defendant of both counts of murder. We also hold that the jury's verdict was not against the weight of the evidence (*see, People v Bleakley,* 69 NY2d 490, 495).

On the count of conspiracy in the second degree, it is required that a showing be made that it is agreed between one or more persons that a class A felony be performed or it is agreed to cause the performance of such conduct (*see,* Penal Law § 105.15). The evidence, disclosed by the testimony of Clemons, indicated that Clemons and defendant agreed on June 21, 1991 to go to decedent's house with the intent of committing a class A felony, that is, murder in the second degree, and they in fact acted on the plan with Clemons driving defendant to decedent's home where defendant secured money and killed him. Farley also testified that he was told of the agreement between Clemons and defendant to execute the plan, that he forbade Clemons to use his car for that purpose and that Clemons was in possession of his car on June 24, 1991. We conclude that the evidence offers more than sufficient proof to uphold defendant's conviction (*see,* Penal Law §§ 105.15, 105.20); nor is

the verdict against the weight of the evidence (*see*, *People v Bleakley*, *supra*, at 495).

Defendant, in rambling fashion, contends that he was taken into custody without probable cause and that his *Miranda* rights were violated. Based on a review of the testimony at the suppression hearing, it is evident that there was sufficient cause to arrest defendant based on the statements given to police by Clemons and Farley, which inculpated defendant in the crime, the observations of Ashley Perkins, who saw a person matching defendant's description carrying a medium-sized brown box walk toward decedent's house, and the subsequent discovery of the medium brown box at the murder scene. The proof adduced satisfied the probable cause requirements to warrant the arrest of defendant (*see, e.g.*, *People v Green*, 118 AD2d 802; *People v Williams*, 115 AD2d 627, *lv denied* 67 NY2d 767).

Based also on the testimony at the suppression hearing, County Court held that defendant was apprised of his *Miranda* rights and that any statements obtained from him were properly admitted. The record supports such holding.

Defendant also challenges the testimony of Clemons, an admitted accomplice in the crimes charged, contending that his testimony was not adequately corroborated pursuant to CPL 60.22 (1). Corroborating evidence will be held sufficient if it tends to connect the defendant with the commission of the crime so as to reasonably satisfy the jury that the accomplice is telling the truth (*see*, *People v Cunningham*, 48 NY2d 938, 940). There was ample evidence corroborating Clemons' testimony, including the testimony of decedent's mother, the finding of defendant's palm print on the medium-sized brown package found in decedent's home, the testimony of Perkins placing a black male fitting defendant's description at the scene of the murder, the sound of a scream emanating from the direction of decedent's home shortly thereafter, and defendant's incriminating statement to Farley telling him not to say anything about the murder or they would all be dead. We conclude that Clemons' testimony was appropriately admitted in evidence.

Defendant also challenges the admission of the testimony of Farley about out-of-court statements made by Clemons concerning the murder on the ground that the People failed to make a prima facie showing that Clemons was a coconspirator. After a prima facie showing of conspiracy, any declaration by a conspirator made during the course of and in furtherance of the conspiracy is admissible against a coconspirator as an

exception to the hearsay rule (*see, People v Berkowitz*, 50 NY2d 333, 341). The People offered testimony of several witnesses to establish a conspiracy between Augustine, Clemons and defendant. The most telling evidence was the testimony of Clemons, himself an admitted party to the conspiracy, who testified at length about his involvement with defendant in the planning and execution of the crimes. Clemons testified that defendant paid him $1,500 for driving defendant to decedent's house. This evidence establishes prima facie the existence of the conspiracy and, thus, any testimony by Farley concerning out-of-court statements made by Clemons was admissible as an exception to the hearsay rule (*see, supra*, at 341-342). We also note that Clemons, who testified to the statements in question, testified at length during the trial and was subject to cross-examination by defense counsel. Defendant was thus able to confront him as to any statement Farley may have attributed to him, thereby eradicating any risk inherently associated with the admission of hearsay (*see, People v Sanders*, 56 NY2d 51, 63-64).

Defendant also contends that a hearing was held in chambers before the trial, in his absence, and that pursuant to *People v Ventimiglia* (52 NY2d 350) he was denied his uncontroverted right to be present. We discount this contention. Defendant has failed to offer any evidence in support thereof. We further note that the uncharged crime which was the subject of the *Ventimiglia* hearing involved testimony concerning a drug buy. The testimony was to the effect that defendant had given the money that he received from Augustine as payment for doing away with decedent to Clemons to buy drugs. This testimony was part and parcel of the conspiracy engaged in by Clemons and defendant and was, in any event, admissible as evidence of the conspiracy (*see, People v Vails*, 43 NY2d 364, 368).

Defendant contends that County Court erred in its charge to the jury as to conspiracy, and in its failure to charge that Farley was an accomplice to the crimes charged as a matter of law. The first contention was not preserved by an exception on the record, or a request to charge, and is deemed waived (*see,* CPL 470.05; *People v Chin*, 67 NY 22, 34). The second contention is without merit in that the issue of Farley's complicity was a factual determination for the jury to make (*see, People v Cobos*, 57 NY2d 798, 801).

Defendant urges that County Court erred in denying his motion to set aside the jury verdict on the ground of juror misconduct. The court found, after hearings, that the miscon-

duct (a juror going out to buy cigarettes and beer, jurors gathering in one room for a game of cards and beer, a juror reading a newspaper and jurors watching a newscast which commented on the length of the jury's deliberation) did not affect the jury's consideration of the evidence, nor did it prejudice defendant's substantial rights. We concur with this finding.

Defendant's next contention of ineffectiveness of his trial counsel is belied by the record. Defense counsel mounted an energetic and meaningful defense. We thus reject defendant's argument to the contrary.

Finally, defendant appeals from the sentence imposed on the ground that it is harsh and excessive. We find no abuse of County Court's discretion. The sentence was in accord with statutory guidelines (*see*, Penal Law § 70.00 [2] [a]; [3] [a] [i]). Considering the circumstances surrounding the murder and the multiple stabbing of decedent in the neck, chest and shoulder area, the sentence was completely appropriate.

Cardona, P. J., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is affirmed.