(January 30, 1997)

■ The People of the State of New York, Respondent, v Kenneth R. Augustine, Appellant. [654 NYS2d 179] —Mikoll, J. Appeal from a judgment of the County Court of Tompkins County (Barrett, J.), rendered July 1, 1992, upon a verdict convicting defendant of the crimes of murder in the second degree and conspiracy in the second degree.

On June 24, 1991, at about 10:30 A.M., Eugene Slater, a bookmaker who took bets on sporting events, was stabbed to death in his home in the City of Ithaca, Tompkins County. On July 10, 1991 a Grand Jury indicted defendant, Chris Clemons and Ronnie Sledge, charging each individual with murder in the second degree and conspiracy in the second degree relating to Slater's death. Defendant, also a bookmaker, allegedly hired Clemons and Sledge to kill Slater in the belief that Slater was taking bettors away from him. Clemons became a witness for the prosecution after turning State's evidence and pleading guilty to attempted murder in the second degree. Defendant and Sledge were tried jointly and both were found guilty of murder in the second degree and conspiracy in the second degree. Sledge appealed his conviction which was affirmed by this Court (*see, People v Sledge*, 223 AD2d 922, *lv denied* 88 NY2d 854).

On July 22, 1991 the three defendants and the prosecutor entered into a stipulation, deemed an omnibus pretrial motion, requesting a suppression hearing and inspection of the Grand Jury minutes for legal sufficiency of the evidence to support the indictment and the adequacy of the instructions to the Grand Jury. County Court found the evidence legally sufficient and the legal instructions adequate.

On the morning of August 27, 1991 counsel for defendant filed an omnibus motion seeking, *inter alia*, inspection of the Grand Jury minutes, dismissal of the indictment for legal insufficiency and defective Grand Jury proceedings, suppression of statements made by defendant, invalidation of search war-

rants, sanctions for prosecutorial misconduct relating to discovery and a severance. The motion, due 45 days after arraignment, was one day late and orally rejected by County Court as untimely. Defense counsel thereupon filed a second notice of motion requesting, *inter alia*, consideration of the omnibus motion on the merits. County Court also rejected this motion. Following a suppression hearing, County Court held that defendant's July 25, 1991 and July 30, 1991 statements to police were admissible.

After trial, County Court denied defendant's CPL 330.30 motion to set aside the verdict as not supported by legally sufficient evidence, as against the weight of the evidence and for alleged juror misconduct during deliberations. County Court thereafter denied, after a hearing, defendant's motion to set aside the verdict because of additional juror misconduct during sequestration, including claims that one juror left the hotel to purchase beer and cigarettes, several jurors consumed beer and wine, played cards, viewed a television interview with defendant's attorney, and one juror spoke to his wife on the telephone concerning the fact that the jury was having trouble reaching a verdict.

Defendant was sentenced to 25 years to life in prison on the murder charge and 5 to 15 years on the conspiracy charge, both sentences to run concurrently. On appeal defendant raises numerous issues which this court has considered and, in affirming, will address to the extent deemed appropriate.

Defendant's argument that County Court's refusal to consider the merits of his belated omnibus motion was arbitrary, capricious and an illegal forfeiture of defendant's rights is rejected. County Court did not abuse its discretion in refusing to consider defendant's omnibus motion, submitted one day late (*see*, CPL 255.20 [1]). County Court properly refused to consider the motion on the merits as motions for such relief made after expiration of the statutory period may be summarily denied (*see*, *People v Coates*, 157 AD2d 843).

Defendant's second application for review of his omnibus motion on the merits was also properly denied. In his supporting papers defendant stated that the reason for his delay in making the motion was the prosecutor's complicated and convoluted theory, the prosecutor's delay in providing discovery material, the need to preliminarily review his discovery material and his unexpected difficulty in contacting defendant to obtain his signature on the motion papers. As County Court did not err in rejecting the original motion as untimely (*see*, *People v Piasta*, 136 AD2d 887, *lv denied* 71 NY2d 1031), rejec-

tion of this second application based on law office failure was likewise not improper (*see, People v Dean*, 74 NY2d 643, 644; *People v Colon*, 127 AD2d 678, 679, *affd* 71 NY2d 410, *cert denied* 487 US 1239).

Defendant's contention that County Court erred in failing to consider and grant that portion of his omnibus motion requesting a severance of his trial from Sledge's trial fails. Defendant effectively waived the joint trial issue due to the untimeliness of his omnibus motion (*see, People v Snare*, 216 AD2d 674, 675, *lv denied* 86 NY2d 802). In any event, were this Court to consider defendant's motion for severance it would be denied in the exercise of this Court's discretion (*see*, CPL 200.40 [1]; *People v Mahboubian*, 74 NY2d 174, 183). Where, as here, the proof against the defendants is provided by the same evidence, a joint trial is preferred and a severance will be granted only for the most cogent reasons, not present in this case (*see, People v Mahboubian, supra*, at 183; *see also, People v Bornholdt*, 33 NY2d 75, 87, *cert denied sub nom. Victory v New York*, 416 US 905; *People v Counts*, 214 AD2d 897, 898, *lv denied* 86 NY2d 792). Further, the record indicates that the proof as it related to each offense was clearly and separately presented (*see, People v Jackson*, 178 AD2d 851, 852, *lv denied* 79 NY2d 1002) so that there did not appear to be a "substantial likelihood that the jury would be unable to consider separately the proof as it relates to each offense" (CPL 200.20 [3] [a]).

Defendant's claim that the evidence before the Grand Jury was not legally sufficient as a matter of law to warrant the indictment against defendant and should be dismissed is not reviewable on appeal from a conviction (*see*, CPL 210.30 [6]; *People v Schulze*, 224 AD2d 729, *lv denied* 88 NY2d 853; *People v Sledge*, 223 AD2d 922, *supra*).

Defendant's contention that the search warrants executed in this case were invalid because the supporting statements for the warrants were legally insufficient is without merit. The initial warrant application was supported by the sworn affidavit of Police Sergeant David Nazer, who stated the basis for his belief that reasonable cause existed to search defendant's apartment. Attached to the warrant application were two sworn statements made to police by Robert Farley, Jr., a signed statement from defendant and a sworn statement from Nancy Slater, Slater's ex-wife.

Nancy Slater's averment recounted that Slater was involved in gambling. Farley's statement detailed conversations he had with Clemons prior to the murder of Slater, namely, that Clemons told him that he had to do a "hit" for a guy named Ken

who was in gambling and, he believed, the mob. Farley related that Clemons told him Ken was going to give him "a nice lump sum of money" for doing it. Farley further asserted that Clemons told him that he believed defendant wanted the hit because Slater was in gambling and owed money to the mob. Farley also described Ken as "a short chubby Italian guy" who lived a couple of doors away from where Clemons lived. Further, Farley related that on the day after the murder Clemons told him that Sledge had done the job and that he assumed that Clemons had driven Sledge to Slater's house using his car. In a separate affidavit Farley described a box that he found in his car prior to the murder, which he believed had been put there by Clemons. This box had styrofoam inside and an empty champagne bottle. Farley related that Clemons told him that the box was for the guy he was supposed to kill. Defendant, in a written statement to the police, stated that he knew Slater and admitted that on one occasion, believing that Slater was interfering with his gambling business, he grabbed Slater by the throat and told him to stay away from his customers. Thus, sufficient proof was submitted to support issuance of the initial search warrant as well as the subsequent warrant applications that incorporated the initial search warrant by reference (*see, People v Tambe*, 71 NY2d 492, 502).

Defendant's assertion that there was a failure to show that Farley was a credible and/or reliable informant as to statements Farley attributed to Clemons is not persuasive. As Farley was a named informant and his sworn statements described the factual basis for his information, his statements could reasonably be relied upon as support for the warrant (*see, People v Hicks*, 38 NY2d 90). Moreover, the evidence considered in its entirety provides a substantial basis to support the magistrate's finding of probable cause for the warrant.

Also without merit is defendant's claim that the search warrant was not valid because of the prosecutor's misconduct in not informing the issuing Magistrate that prior to giving police his June 25, 1991 statement, police officers had promised defendant that they would not use anything he said about gambling against him in any way. Nazer stated in his affidavit supporting the search warrant that he was advised by Investigator Dale Johnson that he (Johnson) had spoken to defendant on June 25, 1991 and that "[a]fter being assured that he would not be prosecuted for gambling offenses, [defendant] gave a voluntary statement". As this affidavit was before the issuing magistrate, he had the opportunity to consider promises made to defendant and to assess defendant's statement in that light. Defendant's statement was made voluntarily and without coercion.

Defendant's claim that the applications for the search warrants and the search warrants were overbroad, allowing the executing officers to make discretionary decisions as to the things to be seized particularly with respect to "gambling records", is without merit. The language of the search warrants was sufficiently particularized to allow the police officers to reasonably ascertain and identify the things authorized to be searched and seized (*see, People v Nieves*, 36 NY2d 396, 401). Defendant's argument that his June 30, 1991 statement was inadmissible and should have been suppressed is irrelevant because such statement was never offered or received into evidence at trial.

Defendant's claims that County Court improperly limited each attorney's voir dire of prospective jurors to 15 minutes and improperly refused to hear arguments on defendant's motion for an extension of the allotted time lacks merit. County Court may in its discretion limit the scope of voir dire, as long as counsel is given a fair opportunity to ask potential jurors relevant and material questions (*see, People v Jean*, 75 NY2d 744, 745; *People v Pepper*, 59 NY2d 353, 358). Review of the record demonstrates that defense counsel was able to ask appropriate questions of the jury panel and did so. On at least one occasion County Court afforded defense counsel an additional opportunity to inquire further on specific questions. County Court's exercise of discretion was reasonable and not improper (*see, People v Jean, supra; People v Dart*, 186 AD2d 905, 907, *lv denied* 81 NY2d 787).

We also reject defendant's contention that County Court erred by denying defendant the right to be present during the *Ventimiglia* and *Sandoval* hearings and at sidebar and chamber conferences. As in *People v Sledge* (223 AD2d 922, 926, *supra*), there is no conclusive proof that defendant's right to be present at the hearings, the sidebar or chamber conferences was denied. Defendant has not rebutted the presumption of regularity attached to official court proceedings (*see, People v McGee*, 220 AD2d 799, 801, *lv denied* 87 NY2d 1022). Defendant has presented only his allegation that he was not present at either the *Sandoval* or *Ventimiglia* hearings. Likewise, he points to no conclusive proof in the record establishing that he was not present at sidebar or chambers conferences. His conclusory allegations are not sufficient to rebut the presumption of regularity (*see, People v Robinson*, 191 AD2d 523, *lv denied* 81 NY2d 1018; *cf., People v Michalek*, 82 NY2d 906).

Defendant's argument that the evidence presented at trial was legally insufficient to sustain the verdict and, thus, County

Court erred in denying his motion for dismissal, is without merit. The evidence was legally sufficient to satisfy the burden of proof requirements for every element of the crimes of murder in the second degree and conspiracy in the second degree. County Court also properly instructed the jury that whether Farley was an accomplice was a question of fact for the jury to resolve (*see, People v Sledge, supra,* at 926). In any event the record contains ample evidence to corroborate Farley's testimony. Additionally, there was no question of Sheryl Gatewood's involvement in the crime for the jury to resolve.

Proof of this defendant's intent to cause the death of Slater is found in the circumstantial evidence (*see, People v Johnson,* 101 AD2d 684). Circumstantial evidence may supply proof that an accessory shares the intent of a principal actor provided the evidence is sufficient to prove guilt beyond a reasonable doubt and is capable of excluding to a moral certainty every reasonable hypothesis of innocence (*see, supra,* at 684). There is sufficient evidence to infer that defendant intended to cause the death of Slater. Viewing the evidence in the light most favorable to the People (*see, People v Alexander,* 75 NY2d 979, 980; *People v Contes,* 60 NY2d 620, 621), there was sufficient evidence produced at trial to establish through direct and circumstantial evidence that defendant intended to kill Slater (*see, People v Benzinger,* 36 NY2d 29, 32; *People v Johnson, supra*).

There was also sufficient proof to establish the crime of conspiracy in the second degree, namely that defendant conspired with one or more of the codefendants by agreeing to do an unlawful act and that an overt act was done in furtherance of the agreement (*see, People v Harris,* 294 NY 424; *People v Flack,* 125 NY 324). A conspiracy may be proven by circumstantial evidence (*see, People v Flack, supra,* at 332-333). There was ample evidence of the existence of a conspiracy based on the testimony of Clemons, the admissions of defendant, the testimony of Farley, Gatewood and the other witnesses, plus the evidence of the actions undertaken to effectuate the crime. Moreover, there was sufficient corroboration of the testimony of the accomplices.

Defendant's argument that the verdict is against the weight of the evidence is without merit. Viewed in a neutral light (*see, People v Rose,* 215 AD2d 875, 877, *lv denied* 86 NY2d 801), the verdict cannot be said to be against the weight of the evidence (*see, People v Carthrens,* 171 AD2d 387, 392).

Finally, we reject defendant's argument that juror misconduct requires reversal and a new trial. The misconduct did not

affect the jury's verdict or prejudice defendant's rights (*see, People v Sledge, supra*).

We have considered defendant's other arguments for reversal and find them to be without merit.

Cardona, P. J., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.