People v Mero (2023 NY Slip Op 06000)

People v Mero

2023 NY Slip Op 06000

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

110765 112288
[*1]The People of the State of New York, Respondent,
v
Edward Mero, Appellant.

Calendar Date:September 6, 2023

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant.
P. David Soares, District Attorney, Albany (Emily A. Schultz of counsel), for respondent.

Clark, J.P.
Appeals (1) from a judgment of the County Court of Albany County (Peter A. Lynch, J.), rendered February 2, 2018, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and tampering with physical evidence (two counts), and (2) by permission, from an order of the Supreme Court (Peter A. Lynch, J.), entered March 6, 2020 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.
In 2017, defendant was arrested and charged with two counts of murder in the second degree and two corresponding counts of tampering with physical evidence. The first set of charges stemmed from the death of defendant's roommate (hereinafter victim A), whose body was found after a fire at their shared apartment in January 2013, while the second set of charges stemmed from the death of victim B, whose remains were found in a shallow grave in May 2015. Defendant filed an omnibus motion seeking, among other things, to sever the counts related to each victim, which motion the People opposed. County Court denied that branch of the motion, finding that defendant had failed to establish that good cause existed to support severance. Defendant thereafter sought to suppress statements that he allegedly made to two incarcerated individuals, which motion County Court denied after a hearing. After a jury trial, defendant was found guilty as charged, and he was sentenced to two consecutive prison terms of 25 years to life for the murder in the second degree convictions and to lesser prison terms for the tampering with physical evidence convictions.
In December 2019, defendant moved to vacate the judgment of conviction pursuant to CPL 440.10, contending that his trial counsel had an improper business relationship with one of the assistant district attorneys (hereinafter the ADA). Specifically, defendant alleged that an impermissible conflict of interest existed because the ADA — who was actively involved in defendant's prosecution — had an ongoing business relationship with trial counsel whereby trial counsel paid the ADA to write appellate briefs for a number of her clients. Following a hearing, Supreme Court denied defendant's motion finding that, while the relationship presented a potential conflict of interest, it did not operate upon the defense. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL article 440 motion.
Defendant first challenges both the legal sufficiency and weight of the evidence supporting his convictions. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of [each] crime proved beyond a reasonable doubt" (People v Lundy, 218 AD3d 839, 841 [3d Dept 2023] [internal quotation marks and citations omitted]; see People [*2]v Watson, 174 AD3d 1138, 1139 [3d Dept 2019], lv denied 34 NY3d 955 [2019]). When "conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Barzee, 190 AD3d 1016, 1017-1018 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]; see People v Butkiewicz, 175 AD3d 792, 793 [3d Dept 2019], lv denied 34 NY3d 1076 [2019]). Where a credibility dispute arises, "we give great deference to the factfinder's credibility assessments, based on the factfinder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bickham, 189 AD3d 1972, 1973 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 1095 [2021]; see People v Jones, 202 AD3d 1285, 1286 [3d Dept 2022]). As relevant here, a person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he [or she] causes the death of such person or of a third person" (Penal Law § 125.25 [1]). A person is guilty of tampering with physical evidence, as relevant here, when "[b]elieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he [or she] suppresses it by any act of concealment, alteration or destruction" (Penal Law § 215.40 [2]).
As to the charges relating to victim A, the People proffered the testimony of a neighbor who reported hearing what sounded like a man and a woman arguing in the street shortly before the fire. An Albany Fire Department (hereinafter AFD) investigator testified that the fire originated in victim A's bedroom. Another AFD investigator testified that, although the fire was officially classified as "accidental," he believed it should have been categorized as "undetermined." An Albany Police Department (hereinafter APD) investigator testified that, shortly after the fire was extinguished, defendant appeared visibly upset and reported that, earlier in the night, victim A had been inebriated so he helped her up the stairs toward her bedroom. According to that investigator, defendant reported that sometime between 2:00 a.m. and 2:30 a.m., he left the apartment to "drive around and clear his head," then ended up sleeping in his car in his parents' driveway. At the time, defendant was employed with the Albany Water Department (hereinafter AWD) and, according to several of his coworkers, defendant would jokingly boast that he could start a fire and burn down a house without getting caught, and he made these comments both before and after the fire.
The medical examiner who conducted an [*3]autopsy of victim A's body testified that his external examination was limited by the charred condition of her remains. He explained that although fire victims would often have carboxyhemoglobin levels above 50% and soot in their airways, victim A's carboxyhemoglobin was 4% and her trachea was "basically soot free." In the end, the medical examiner opined, to a reasonable degree of medical certainty, that the cause of victim A's death was severe thermal burns. The People also proffered the testimony of two incarcerated individuals, one of whom testified that defendant admitted to having killed victim A, while the other testified that defendant denied such killing. Regarding defendant's assertion that his convictions relating to victim A are premised on circumstantial evidence, "we do not distinguish between direct or circumstantial evidence in conducting a legal sufficiency and/or weight of the evidence review" (People v Truitt, 213 AD3d 1145, 1147 [3d Dept 2023] [internal quotation marks and citation omitted], lv denied 39 NY3d 1144 [2023]; see People v Hines, 97 NY2d 56, 62 [2001]). Viewing the evidence presented by the People — including defendant's comments to his AWD coworkers and his admission to one of the incarcerated individuals — in the light most favorable to the People, we find that a valid line of reasoning and permissible inferences exist from which a rational juror could conclude that defendant caused the death of victim A and then set the fire to destroy the physical evidence related to her death (see People v Campbell, 196 AD3d 834, 836-837 [3d Dept 2021], lv denied 37 NY3d 1025 [2021]; People v Stover, 178 AD3d 1138, 1143-1144 [3d Dept 2019], lv denied 34 NY3d 1163 [2020]; People v Stanford, 130 AD3d 1306, 1308 [3d Dept 2015], lv denied 26 NY3d 1043 [2015]).
With respect to the weight of the evidence, defendant proffered the testimony of a retired APD arson investigator, who testified that he had found no accelerants at the scene of the fire where the body of victim A was discovered. However, he did not determine the cause of the fire, as he retired before the investigation was completed. According to the retired investigator, he spoke to defendant at the scene and defendant had described victim A as very intoxicated. Defendant had also reported leaving the shared apartment to drive around and clear his head, and that he ended up staying at his parents' home. On direct examination, victim A's coworker testified that he and the victim hung out the night of the fire and the two drank alcohol and smoked marihuana but, on cross-examination, he admitted that he had his nights mixed up and had actually seen her the night prior to the fire. An APD officer testified that, the night of the fire, he had responded to a domestic call but, on cross-examination, asserted that the disturbance was between a mother and a daughter. In light of the circumstantial nature of the evidence connecting defendant to victim A's death and to the fire, the [*4]varying explanations provided for the cause of the fire and the testimony of the incarcerated individual to whom defendant denied killing victim A, a different verdict would not have been unreasonable. However, deferring to the jury's implicit credibility determinations and viewing the evidence in a neutral light, we find that the verdict convicting defendant of murder in the second degree for the death of victim A, and of the corresponding tampering charge, is supported by the weight of the evidence (see People v Franklin, 216 AD3d 1304, 1311-1312 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Campbell, 196 AD3d at 837; People v Portee, 56 AD3d 947, 949-950 [3d Dept 2008], lv denied 12 NY3d 820 [2009]).
Turning to the charges relating to victim B, who suffered from drug addiction, her housemate testified that victim B worked as an escort, charging money to go on "dates" with her clients. The housemate explained that the two developed a system whereby the housemate and victim B would establish contact at some point during her dates to ensure her safety. The housemate explained that victim B and defendant had a date scheduled for December 3, 2014, and that she became aware of such date about a month prior because victim B shared that it involved a significant amount of money. Because victim B did not own a cell phone, she would use the housemate's phone to exchange texts with defendant. The housemate testified that she last saw victim B on the morning of December 3, 2014, leaving with defendant, and that she was unable to establish contact during their date. Victim B's boyfriend — who shared a residence with victim B and the housemate — testified that he obtained defendant's number from the housemate and reached out to ask about victim B's whereabouts. According to the boyfriend, defendant confirmed that he and victim B had been at his parents' residence but, after he caught her using drugs, he kicked her out and had not seen her again.
During the first week of December 2014, while driving by a waterline operated by AWD, a resident of the Town of Coeymans, Albany County observed a car parked off the side of the road. The resident testified that he observed a man walking from the parked car toward the waterline; he described the man as being over six feet tall, big, wearing a black skull cap with a red or orange design and carrying a very large black backpack and, at trial, identified defendant as the man he had seen that night. Then, in May 2015, a jogger in Coeymans discovered victim B's body about 20 feet from that waterline. An AWD supervisor testified that, on two occasions, he had purchased black skull caps with a red design as a gift for the AWD employees that he supervised. Although he could not confirm that defendant had received one of those caps, the supervisor recalled that defendant's father, who also worked for AWD until around 2015, had received one of those caps. A different AWD employee, who confirmed that defendant owned [*5]one of the AWD caps, testified that while on a work call at an area of the waterline that included a large sewer, defendant — apparently joking — commented that the area would be a good place to get rid of a body. The medical examiner testified that the discovery of victim B's remains in a shallow grave led him to conclude that her death was a homicide, and the autopsy revealed that victim B had sustained non-lethal blunt force trauma to her face. However, the body's decomposition prevented him from ascertaining the cause of death. The medical examiner also explained that the cold winter weather made it very difficult to ascertain a time of death, but he believed that she had died at least a month or two — but likely longer — before her body was discovered. Additionally, the same two incarcerated individuals testified, and both asserted that defendant admitted to killing victim B.
Viewed in the light most favorable to the People, defendant was the last person to see victim B alive, he was identified by the Coeymans resident who observed him at the site of victim B's burial in early December 2014 and he later confessed to the two incarcerated individuals. Under these circumstances, we are convinced that a valid line of reasoning and permissible inferences would allow a rational juror to conclude that defendant caused the death of victim B and then buried her body (see People v Campbell, 196 AD3d at 836-837; People v Stover, 178 AD3d at 1143-1144; People v Stanford, 130 AD3d at 1308). With respect to the weight of the evidence, a different verdict would not have been unreasonable, in light of the circumstantial nature of the case and the testimony of a store attendant and the ex-wife of victim B's boyfriend, both of whom stated that they had seen victim B alive well after the time when the Coeymans resident reported seeing defendant at the burial site. However, both of those witnesses admitted, during cross-examination, that their purported sightings were either mistaken or untrue. Deferring to the jury's credibility determinations, and viewing the evidence in a neutral light, the verdict convicting defendant of murder in the second degree for the death of victim B and the corresponding tampering charge is supported by the weight of the evidence (see People v Nellis, 217 AD3d 1056, 1059 [3d Dept 2023]; People v Franklin, 216 AD3d at 1311-1312; People v Young, 190 AD3d 1087, 1092 [3d Dept 2021], lv denied 36 NY3d 1102 [2021]).
Next, we reject defendant's contention that County Court erred in denying his motion to suppress the incriminating statements that he allegedly made to the two incarcerated individuals, as they were not acting as government agents. "The Sixth Amendment right to counsel prohibits the use of incriminating statements deliberately elicited from a defendant by government agents" (People v Johnson, 27 NY3d 199, 205 [2016] [citations omitted]). To prevail, defendant must prove that the People were "actively involved in, or even encouraged[*6]," the incarcerated individuals' decision to volunteer their statements (People v Bent,160 AD2d 1176, 1177 [3d Dept 1990], lv denied 76 NY2d 937 [1990]; see People v Johnson, 303 AD2d 830, 833-834 [3d Dept 2003], lvs denied 99 NY2d 655 [2003], 100 NY2d 583 [2003]). The record discloses that the incarcerated individuals acted independently of the People, that they provided the statements to the People based solely on their own initiatives and that the People were passive recipients of such information. As a result, the incarcerated individuals were not agents of the government and the court did not err in denying defendant's motion to suppress their statements (see People v Ozkaynak, 217 AD3d 1376, 1379 [4th Dept 2023], lv denied 40 NY3d 998 [2023]; People v Wakefield, 175 AD3d 158, 171 [3d Dept 2019], affd 38 NY3d 367 [2022], cert denied ___ US ___, 143 S Ct 451 [2022]; People v Burchard, 20 AD3d 818, 820 [3d Dept 2005], lv denied 5 NY3d 851 [2005]).
Defendant also argues that County Court erred in denying his motion to sever the charges related to victim A's death from those related to victim B's death. As relevant here, counts "based upon different criminal transactions" are joinable if they "are defined by the same or similar statutory provisions and consequently are the same or similar in law" (CPL 200.20 [2] [c]; compare e.g. People v Pierce, 14 NY3d 564, 574 [2010]). A defendant who brings a motion to sever counts of an indictment that are joinable solely under CPL 200.20 (2) (c) must establish that good cause exists such that the court should, in the interest of justice, exercise its discretion to sever such counts from the other counts included in the same indictment (see CPL 200.20 [3]; People v Smith, 147 AD3d 1527, 1528 [4th Dept 2017], lv denied 29 NY3d 1087 [2017]; People v Johnson, 79 AD3d 1264, 1265 [3d Dept 2010], lv denied 16 NY3d 832 [2011]; People v Johnston, 273 AD2d 514, 516 [3d Dept 2000], lv denied 95 NY2d 935 [2000]). Absent an abuse of discretion, we will not disturb the motion court's decision (see People v Flower, 173 AD3d 1449, 1455 [3d Dept 2019], lv denied 34 NY3d 931 [2019]; People v Smith, 147 AD3d at 1530). Good cause exists, but is not limited to, where one count is supported by substantially more proof than another joinable count such that "there is a substantial likelihood that the jury would be unable to consider separately the proof as it relates to each offense" (CPL 200.20 [3] [a]; see People v Ford, 11 NY3d 875, 879 [2008]; see e.g. People v Mahon, 188 AD3d 915, 916-917 [2d Dept 2020], lv denied 36 NY3d 1052 [2021]; People v Mathis, 37 AD3d 212, 212-213 [1st Dept 2007], lv denied 8 NY3d 987 [2007], lv dismissed 9 NY3d 847 [2007]; People v Daniels, 216 AD2d 639, 639-640 [3d Dept 1995]), where "a defendant has both important testimony to give concerning one count and a genuine need to refrain from testifying on the other" (CPL 200.20 [3] [b]; see People v Nicholson, 210 AD3d 1009, 1011-1012 [3d Dept 2022], [*7]lv denied 39 NY3d 1079 [2023]; People v Flower, 173 AD3d at 1455; People v Davis, 141 AD3d 542, 543 [2d Dept 2016], lv denied 28 NY3d 1027 [2016]; People v Bonner, 94 AD3d 1500, 1501 [4th Dept 2012], lv denied 19 NY3d 1101 [2012]) or where joinder results in counts "so numerous as to tempt the jury to view the evidence cumulatively and to convict [the] defendant based on a perception that he [or she] was prone to commit the sort of offenses charged in the indictment" (People v Streitferdt, 169 AD2d 171, 176 [1st Dept 1991], lv denied 78 NY2d 1015 [1991]; accord People v Slaughter, 207 AD3d 1185, 1186 [4th Dept 2022], lv denied 39 NY3d 964 [2022]).[FN1] In considering a motion for discretionary severance, trial courts must be afforded reasonable latitude, "weigh[ing] the public interest in avoiding duplicative, lengthy and expensive trials against the defendant's interest in being protected from unfair disadvantage" (People v Lane, 56 NY2d 1, 8 [1982]).
In support of the motion, defendant conceded that, because the charges were based on the same statutory provisions, they were joinable under CPL 200.20 (2) (c). Defendant's motion papers highlight that the evidence relating to each victim is very different, and that the planned defenses would also be different. Specifically, as to victim A, the defense planned to focus on the evidence that supported the conclusion that the cause of the fire — and victim A's death — were accidental, while, as to victim B, the defense planned to argue that the People's witnesses had wrongly identified defendant as the killer. Defendant argued that the People had joined "two underwhelming cases" in hopes that the jury would be more likely to convict a "common suspect." In opposing the motion, the People argued that the counts in the indictment were properly joinable pursuant to CPL 200.20 (2) (c) and, among other things, the People planned to call two incarcerated individuals who were housed with defendant and to whom defendant made certain admissions. At trial, both of the incarcerated individuals and the medical examiner, among others, provided testimony relevant to each of the two victims. Defendant's motion was facially devoid of any good cause showing. Indeed, in arguing that the evidence for both cases was "underwhelming" and that the charges relating to each victim "could not be any more different," defendant cannot be said to have met his burden of establishing that "there was a significant difference in the quantum of proof of one incident as compared to the other[ ], or that there was a substantial likelihood that the jury would be unable to consider separately the proof as it related to each incident" (People v Mahon, 188 AD3d at 916-917; see CPL 200.20 [3] [a]; compare People v Martinez, 165 AD3d 1288, 1290 [2d Dept 2018]; People v Daniels, 216 AD2d at 639-640 [finding abuse of discretion and granting severance where the quantum of proof relating to two counts of rape was so disproportionate to the proof proffered [*8]on a third count of rape, such that there was a great likelihood of the jury considering the evidence proffered in the first two counts as propensity evidence in the third count]).
Furthermore, defendant's contention that the joinder of these counts caused him undue prejudice is purely speculative, as the record on appeal shows that the evidence relating to each victim was "separately presented, uncomplicated and easily distinguishable" (People v St. Ives, 145 AD3d 1185, 1186 [3d Dept 2016] [internal quotation marks and citation omitted], lv denied 29 NY3d 1036 [2017]; see People v Thomas, 208 AD3d 1617, 1618 [4th Dept 2022]; People v West, 86 AD3d 583, 584 [2d Dept 2011], lv denied 17 NY3d 956 [2011]; People v Augustine, 235 AD2d 915, 917 [3d Dept 1997], appeal dismissed 89 NY2d 1072 [1997], lv denied 89 NY2d 1088 [1997]).[FN2] Additionally, County Court properly instructed the jury to separately consider the evidence applicable to each of the charged crimes, to vote on each separately and to avoid considering evidence of guilt on one count as propensity evidence of guilt on other charged counts (see People v Hurt, 214 AD3d 609, 610-611 [1st Dept 2023], lv denied 39 NY3d 1155 [2023]; People v Mercer, 211 AD3d 612, 613 [1st Dept 2022], lv denied 39 NY3d 1112 [2023]; People v St. Ives, 145 AD3d at 1186). Defendant fails to point to any place in the record where the People used any proof for impermissible propensity reasons, and we discern no such use. Under these circumstances, County Court did not abuse its discretion.
Defendant also contends that Supreme Court erred when, after an evidentiary hearing, it denied his CPL 440.10 motion to vacate the judgment of conviction based upon a business relationship that existed between defendant's trial counsel and one of the ADAs involved in defendant's prosecution. As our dissenting/concurring colleagues highlight, an attorney — whether laboring for the defense or the prosecution — has an obligation to disclose the existence of a potential conflict of interest to the defendant and the court, and the court must then conduct an inquiry to determine whether the defendant understands the possible risks associated with the identified conflict and whether he or she elects to waive it (see People v Sanchez, 21 NY3d 216, 223 [2013]; People v Solomon, 20 NY3d 91, 96 [2012]; People v Wandell, 75 NY2d 951, 952 [1990]; People v McDonald, 68 NY2d 1, 8 [1986]). However, the failure of an attorney to disclose a potential conflict and the court's failure to conduct the appropriate inquiry only merit reversal if an actual conflict exists and the defendant has not waived it (see People v Sanchez, 21 NY3d at 223; People v Lynch, 104 AD3d 1062, 1062-1064 [3d Dept 2013]). Where, instead, the facts present a potential conflict — such as the business relationship between trial counsel and the ADA (see People v Thomas, 217 AD3d 1125, 1127 [3d Dept 2023], lv denied ___ NY3d ___ [Oct. 27, 2023]) — neither the attorneys' failure to disclose [*9]nor the lack of the corresponding judicial inquiry nor the absence of a conflict waiver by defendant require reversal (see People v Payton, 22 NY3d 1011, 1014 [2013]; People v Harris, 99 NY2d 202, 211-212 [2002]; People v McCann, 126 AD3d 1031, 1035 [3d Dept 2015], lv denied 25 NY3d 1167 [2015]). Rather, reversal is only required if defendant meets the heavy burden of establishing that the "potential conflict of interest affected, or operated on, or bore a substantial relation to the conduct of the defense" (People v Baber, 182 AD3d 794, 802 [3d Dept 2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 1064 [2020]; see People v Gibson, 185 AD3d 1101, 1102 [3d Dept 2020], lv denied 35 NY3d 1066 [2020]). Here, deferring to Supreme Court's superior position to observe the witnesses and make credibility determinations, defendant failed to meet such a burden, and "nothing on the face of the record suggests that such representation was in any manner affected by the ADA's and [trial counsel's] undisclosed business relationship" (People v Thomas, 217 AD3d at 1128; see People v Sposito, 193 AD3d 1236, 1238 [3d Dept 2021], affd 37 NY3d 1149 [2022]; compare People v McGillicuddy, 103 AD3d 1200, 1201-1202 [4th Dept 2013]; People v DiPippo, 82 AD3d 786, 789-791 [2d Dept 2011], lv denied 17 NY3d 903 [2011]).[FN3] Thus, we find that Supreme Court did not err in denying defendant's motion to vacate the judgment of conviction.
Defendant's remaining contentions, to the extent not expressly addressed herein, lack merit.
Ceresia and Fisher, JJ., concur.
Reynolds Fitzgerald, J. (concurring in part and dissenting in part).
Because we would find that County Court abused its discretion in denying defendant's motion to sever the counts related to each victim, we respectfully dissent. Initially, we agree that as the offenses in this matter are governed by the same or similar statutory provisions, they were properly joined (see CPL 200.20 [2] [c]; People v Flower, 173 AD3d 1449, 1455 [3d Dept 2019], lv denied 34 NY3d 931 [2019]). That said, where, as here, the charges were joined in an indictment solely because they were based on the same statutes, "a court has discretion to order them separately tried in the interest of justice and for good cause shown" (People v Hajratalli, 200 AD3d 1332, 1337 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 1033 [2022]). "Good cause, in turn, may be established by demonstrating, among other things, that there is 'substantially more proof on one or more such joinable offenses than on others and there is a substantial likelihood that the jury would be unable to consider separately the proof as it relates to each offense' " (People v Milford, 118 AD3d 1166, 1168 [3d Dept 2014] [brackets and citations omitted], lv denied 23 NY3d 1065 [2014], quoting CPL 200.20 [3] [a]). Here, the People chiefly relied on circumstantial evidence, the proof linking defendant to either murder is [*10]not overwhelming, the two incidents that form the basis of these charges took place 2½ years apart and there was no unique modus operandi to link the commission of the crimes to defendant (cf. People v Simms, 172 AD2d 336, 337 [1st Dept 1991], lv denied 78 NY2d 974 [1991]; People v Casiano, 138 AD2d 892, 894 [3d Dept 1988], lv denied 72 NY2d 857 [1988]). Further, a review of the record demonstrates that the quantum of evidence relating to each incident was not substantially similar but, rather, proof relating to the second murder is significantly more abundant in quantity and significant in scope. Despite County Court's instruction to the jury to consider the evidence separately, there was a substantial likelihood that the jury "aggregate[d] the evidence relating to each incident" (People v Hoke, 96 AD2d 677, 677 [3d Dept 1983]), as it is much more likely that the jury would focus on the abhorrent common nature of the crimes than to focus on the fundamental differences of proof (see People v Shapiro, 50 NY2d 747, 755 [1980]). Given the foregoing, and "[b]earing in mind the abhorrent nature of the charged crimes and the human tendency to more readily believe a person guilty when it is known or suspected that the accused has engaged in similar crimes, there is great likelihood that the cumulative weight of the proof presented here gravely prejudiced defendant, in that it depicted him as having a propensity to commit [murder and tamper with evidence], and thus improperly swayed the jury to convict . . . on this basis alone" (People v Daniels, 216 AD2d 639, 640 [3d Dept 1995]; see People v Molineux, 168 NY 264, 313 [1901]; People v Jackson, 77 AD2d 630, 632 [2d Dept 1980]).
Although a trial court must be afforded reasonable latitude in exercising discretion and determining whether to sever trials, this matter "created the sort of compelling prejudice that [w]ould have been avoided by the grant of the requested severance" (People v Cardwell, 78 NY2d 996, 998 [1991] [internal quotation marks and citation omitted]). Notwithstanding that "[t]rial courts should generally weigh the public interest in avoiding duplicative, lengthy and expensive trials against the defendant's interest in being protected from unfair disadvantage . . . , we emphasize that compromise of a defendant's fundamental right to a fair trial free of undue prejudice as the quid pro quo for the mere expeditious disposition of criminal cases will not be tolerated" (People v Lane, 56 NY2d 1, 8 [1982] [emphasis omitted]; see People v Martinez, 165 AD3d 1288, 1290 [2d Dept 2018]; People v Stanley, 81 AD2d 842, 843 [2d Dept 1981]). Finally, while we acknowledge that the abuse of discretion standard affords the trial court a great deal of independence, we do not believe it equates to a grant of carte blanche. Accordingly, we would reverse the judgment of conviction and remit the matter for separate trials relative to each victim's death (see People v Bryant, 200 AD3d 1483, 1490 [3d Dept 2021], [*11]appeal dismissed 38 NY3d 1158 [2022]).
Secondly, while we concur with the majority's conclusion that Supreme Court did not err in denying defendant's motion to vacate the judgment of conviction based upon the conflict of interest founded upon the business relationship between his counsel and one of the assistant district attorneys (hereinafter the ADA), we are nonetheless troubled by this conclusion and take this opportunity to voice our concern.
"The State and Federal Constitutions guarantee a criminal defendant legal representation that is reasonably competent, conflict-free and single[-]mindedly devoted to the client's best interests" (People v Payton, 22 NY3d 1011, 1013 [2013] [internal quotation marks and citation omitted]; see People v Ennis, 11 NY3d 403, 409-410 [2008], cert denied 556 US 1240 [2009]). When an ineffective assistance of counsel claim is premised upon a conflict of interest, it can be either an actual or potential conflict. "An actual conflict of interest arises when an attorney has divided and incompatible loyalties within the same matter necessarily preclusive of single-minded advocacy" (People v Brown, 33 NY3d 983, 987 [2019] [internal quotation marks, brackets and citation omitted]). Where an actual conflict has been established and the defendant does not waive it, reversal of the conviction is required (see People v Solomon, 20 NY3d 91, 96 [2012]). Where the court determines that there is a potential conflict of interest, a defendant must demonstrate "that the conduct of his [or her] defense was in fact affected by the operation of the conflict of interest, or that the conflict operated on the representation" (People v Konstantinides, 14 NY3d 1, 10 [2009] [internal quotation marks and citations omitted]; see People v Ennis, 11 NY3d at 410). "[I]t is defense counsel's burden to recognize the existence of a potential conflict of interest, to alert both the client and the court to the potential risks involved, and to obtain the client's informed consent to counsel's continued representation despite those risks. But the prosecutor is also obliged to alert the court when he or she possesses knowledge of facts from which apparent conflict can be inferred" (People v McDonald, 68 NY2d 1, 8 [1986]).
As the majority points out, this Court recently considered this same business relationship between defense counsel's firm and the ADA in People v Thomas (217 AD3d 1125 [3d Dept 2023], lv denied ___ NY3d ___ [Oct. 27, 2023]). While we agree with the analysis of our prior decision and find that under our present case law the case before us presents a potential, rather than actual conflict, we find the facts of each case sufficiently distinguishable so as to give us pause. In Thomas, defense counsel was an associate of the firm representing defendant. Although the Court properly employed the legal fiction of imputing knowledge of the business arrangement between the firm's name partner and the opposing ADA to the associate, there was nothing [*12]to indicate that the associate had any actual knowledge of the arrangement as she was trying the case. Here, there was no need to impute knowledge. The attorney in question is the person who directly hired, assigned work to and paid this particular ADA, whose active prosecution of defendant included involvement in pretrial hearings, preparation of motion documents, presentation of the opening statement and acting as cocounsel throughout the trial. This undisclosed business relationship between defense counsel and the ADA naturally and reasonably gives rise to speculation that the professional judgment of counsel, as well as her zealous representation to which an accused is entitled, might be compromised, thus creating an appearance of impropriety. We concede that this appearance of impropriety falls short of defendant's burden, and that defendant here has failed to produce anything other than speculation that this conflict affected his defense. Our lasting concern is whether, absent extremely unusual circumstances, such a showing can ever be established.
Aarons, J., concurs.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Contrary to the dissent/concurrence's position, when reviewing a trial court's decision on a discretionary severance motion, it is of no consequence that "the two incidents that form the basis of these charges took place 2½ years apart" (see e.g. People v St. Ives, 145 AD3d 1185, 1185 [3d Dept 2016], lv denied 29 NY3d 1036 [2017]; People v Monte, 302 AD2d 687, 688 [3d Dept 2003]) or that "there was no unique modus operandi to link the commission of the crimes to defendant" (compare CPL 200.20 [2] [c]; [3], with CPL 200.20 [2] [b], and People v Raucci, 109 AD3d 109, 117-118 [3d Dept 2013], lv denied 22 NY3d 1158 [2014]).

Footnote 2: Defendant failed to advance any argument that he had important testimony to give regarding one of the victims but a genuine need to refrain from testifying on the charges relating to the other victim (see CPL 200.20 [3] [b]; People v Lane, 56 NY2d at 9-10; People v Young, 48 AD3d 901, 904 [3d Dept 2008]), or that the four counts in the indictment were so numerous that they could cause the jury to convict based upon such numerosity (see People v Slaughter, 207 AD3d at 1186; People v Streitferdt, 169 AD2d at 176).

Footnote 3: The dissent/concurrence also asserts that the failure of trial counsel and the ADA to disclose their business relationship "naturally and reasonably gives rise to speculation that the professional judgment of counsel, as well as her zealous representation to which an accused is entitled, might be compromised, thus creating an appearance of impropriety." Although Supreme Court was able to — and did — take into account the failure of trial counsel and the ADA to disclose and the reasons underlying such failure as part of its decision (see People v Ennis, 11 AD3d 403, 411 [2008], cert denied 556 US 1240 [2009]), the mere appearance of impropriety does not, without more, give rise to the existence of a conflict of interest (see People v Herr, 86 NY2d 638, 641-642 [1995]; People v Thomas, 217 AD3d at 1128 n 2).